Mouloud BELLOUT, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 02–73413.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2004.

Filed April 12, 2004.

Jack Artz, South Pasadena, CA, for the petitioner.

Ethan B. Kanter, Assistant United States Attorney General, Washington, DC, for the respondent.

Before KOZINSKI, O'SCANNLAIN, and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

Mouloud Bellout, a native and citizen of Algeria, petitions for review of the BIA's summary affirmance of the IJ's denial of Bellout's application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The IJ found Bellout statutorily ineligible for relief from deportation because he engaged in terrorist activity when he joined "Armed Islamic Group (GIA)," a State Department-recognized terrorist organization, in 1995 and lived in GIA camps in Algeria for three years. Bellout has been removed to Algeria.

We hold as follows: First, because the IJ found that there are reasonable grounds to believe that Bellout engaged in or is likely to engage in terrorist activity under 8 U.S.C. § 1158(b)(2)(A)(v), we lack jurisdiction to review the IJ's determination that Bellout is ineligible for asylum by virtue of 8 U.S.C. § 1158(b)(2)(D). Second, substantial evidence supports the IJ's conclusion that Bellout is ineligible for withholding of removal. Finally, substantial evidence supports the IJ's denial of deferral of removal under CAT.

## I. FACTS

Bellout attempted to enter the United States at Los Angeles International Airport on January 6, 1999, using a fraudulent Belgian passport. After the INS initiated removal proceedings, Bellout applied for asylum, withholding of deportation, and relief under CAT, alleging that he would be tortured by terrorists or police if he returned to Algeria. At his hearing, Bellout testified that he joined GIA in 1995, lived in GIA mountain camps, made friends with other members, read GIA's pamphlets and literature, discussed ideology with other members of the group, and carried weapons and ammunition. When GIA divided into a second group in 1996, Bellout went with the second group—"Algamma El–Salafia Lel–Daawa Wal Ketal." He remained with this group until 1998, when he left Algeria.

The IJ found that Bellout was statutorily barred from asylum, withholding of removal and relief under CAT as an alien "who the Attorney General knows, or has reasonable grounds to believe, is engaged in or is likely to engage after entry in any terrorist activity."

8 U.S.C. § 1189(a) authorizes the Secretary of State to designate foreign terrorist organizations by providing notice and findings to congressional leaders and publishing the designation in the Federal Register. Unless Congress disapproves the designation, it becomes effective upon publication in the Federal Register. *Id.* § 1189(a)(2)(B). Although the designation is effective for two years, the Secretary

may redesignate a foreign terrorist organization after the two years expire. *Id.* § 1189(a)(4).

The Secretary has designated and redesignated the "Armed Islamic Group (GIA)"[1] as a terrorist organization under 8 U.S.C. § 1189. Designation of Foreign Terrorist Organizations, 62 Fed.Reg. 52650 (Oct. 8, 1997); 64 Fed.Reg. 55112 (Oct. 8, 1999); 66 Fed.Reg. 51088 (Oct. 5, 2001); 68 Fed.Reg. 56860 (Oct. 2, 2003). According to the State Department Office of Counterterrorism's 1999 Report of Foreign Terrorist Organizations, GIA is an extremely violent terrorist group that frequently and brutally attacks and kills civilians, journalists, and foreign residents. The Report says that GIA uses assassinations and bombings and favors kidnaping victims and slitting their throats. According to the Report, GIA's activities are not limited only to Algeria; GIA hijacked an Air France flight in December 1994 and is suspected of a series of bombings in France in 1995.

Because Bellout had been a member of a State Department-designated terrorist organization, the IJ found that Bellout engaged in terrorist activity and, in the alternative, posed a danger to security in the United States. He was therefore ineligible for asylum. He likewise was ineligible for withholding of deportation. The IJ also concluded that Bellout was not entitled to deferral of removal under CAT because he had failed to establish that he would more likely than not be tortured if he returned to Algeria. The BIA affirmed the IJ's decision, adopting that decision as the final agency determination pursuant to 8 C.F.R. § 3.1(a)(7) (2002).

Bellout argues that the IJ erred in finding that he was ineligible for asylum and withholding of removal because he engaged in terrorist activity, and in denying him relief under CAT.

## II. ASYLUM

■ An alien is ineligible for asylum if he is inadmissible or removable for engaging in terrorist activity or if "the Attorney General determines" that "there are reasonable grounds for regarding an alien as a danger to the security of the United States." 8 U.S.C. § 1158(b)(2)(A)(iv)-(v). "Terrorist activities" include membership in "a foreign terrorist organization, as designated by the Secretary [of State] under [8 U.S.C.] section 1189." *Id.* § 1182(a)(3)(B)(i)(V).

The asylum statute deprives this court of jurisdiction to review the Attorney General's determination under 8 U.S.C. § 1158(b)(2)(A)(v) that an alien is ineligible for asylum because the alien is inadmissible or removable because of terrorist activity. *See* 8 U.S.C. § 1158(b)(2)(D). The statute provides:

(D) No judicial review

There shall be no judicial review of a determination of the Attorney General under subparagraph (A)(v) [ineligibility for asylum because the alien is inadmissable for terrorist activity].

*Id.* Thus, this court lacks jurisdiction to review the IJ's determination that Bellout is ineligible for asylum pursuant to § 1158(b)(2)(A)(v) because Bellout is inadmissible or removable because of terrorist activity. *Id.* This portion of the petition for review is dismissed.

## III. WITHHOLDING OF REMOVAL

■ We affirm the IJ's denial of relief if there is reasonable, substantial, and probative evidence to support the decision based on the record as a whole, and we may not

---

**1.** Also known as Groupement Islamique Arme, AIG, Al–Jam'ah al–Islamiyah al–Musal-lah.

reverse the IJ's findings unless the evidence compels a contrary conclusion. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

An alien is ineligible for withholding of removal if "the Attorney General decides that ... there are reasonable grounds to believe that the alien is a danger to the security of the United States." 8 U.S.C. § 1231(b)(3)(B)(iv).[2] Reasonable grounds exist to believe that an alien is a danger to security if the alien "has engaged, is engaged, or at any time after admission engages in any terrorist activity (as defined in section 1182(a)(3)(B)(iv) ...)." *Id.* §§ 1231(b)(3)(B)(iv) and 1227(a)(4)(B). Terrorist activities include membership in "a foreign terrorist organization, as designated by the Secretary [of State] under [8 U.S.C. § ] 1189." *Id.* § 1182(a)(3)(B)(i)(V).

Consistent with the statutory provision for withholding of removal, federal regulation provides for mandatory denial of withholding of removal under CAT if the Attorney General has "reasonable grounds to believe that the alien is a danger to the security of the United States." 8 U.S.C. § 1231(b)(3)(B)(iv); 8 C.F.R. § 1208.16(d)(2) (2003).[3] Thus, if the alien is barred from withholding of removal under § 1231(b)(3)(B)(iv), he is also barred

from withholding of removal under CAT. *Id.*

■ Substantial evidence supports the IJ's conclusion that Bellout engaged in or was likely to engage in terrorist activity because Bellout testified that he was a member of GIA for three years. Because Bellout engaged in terrorist activity, there are reasonable grounds to believe that he is a danger to the security of the United States, and he is ineligible for statutory withholding of removal and withholding of removal under CAT. *See* 8 U.S.C. § 1231(b)(3)(B); 8 C.F.R. § 1208.16(d)(2).

Interpreting a prior version of the asylum statute, we recently held that an alien who engaged in terrorist activity against a foreign country is not necessarily a danger to the security of the United States. *Cheema v. INS,* 350 F.3d 1035, 1040–41 (9th Cir.2003). *Cheema* does not control this case because the court's reasoning in *Cheema* was premised on prior versions of the asylum and withholding statutes. *Id.* The prior asylum statute barred aliens who engaged in terrorist activity from eligibility for asylum and withholding of removal *unless* the Attorney General found that there were not reasonable grounds for regarding the alien as a danger to the security of the United States. *Id.* We held

---

2. Section 1231(b)(3) [INA § 241(b)(3)(B)(iv)] provides in relevant part:

(B) Exception
Subparagraph (A) [withholding of removal] does not apply to an alien deportable under section 1227(a)(4)(D) of this title or if the Attorney General decides that—
...
(iv) there are reasonable grounds to believe that the alien is a danger to the security of the United States ...
For purposes of clause (iv), an alien who is described in section 1227(a)(4)(B) of this title shall be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States.
8 U.S.C. § 1231(b)(3)(B)(iv).

3. The regulation, which applies to withholding of removal under § 1231(b)(3) and CAT, provides in relevant part:

(2) Mandatory denials. Except as provided in paragraph (d)(3) of this section, an application for withholding of removal under section 241(b)(3) [8 U.S.C. § 1231(b)(3)] of the Act or under the Convention Against Torture shall be denied if the applicant falls within section 241(b)(3)(B) [8 U.S.C. § 1231(b)(3)(B)] of the Act .... If the evidence indicates the applicability of one or more of the grounds for denial of withholding enumerated in the Act, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.
8 C.F.R. § 1208.16(d)(2) (2003).

that the Attorney General could not collapse the two-prong statutory test and focus only on terrorist activity. *Id.* at 1042.

However, the statute has changed so there is no longer a two-prong test. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) amended the asylum statute to provide that an alien is ineligible for asylum if the Attorney General decides that there are reasonable grounds for regarding the alien as a danger to the security of the United States *or* that the alien is inadmissible or removable for terrorist activity. Either ground will support the IJ's denial of asylum. Pub.L. 104–208, § 604, 110 Stat. 3009–691 (1996) (codified at 8 U.S.C. § 1158(b)(2)(A)(iv)-(v)). In addition, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended the withholding of removal statute to specifically provide that an alien who engages in terrorist activity "shall be considered to be an alien for whom there are reasonable grounds for regarding as a danger to the security of the United States." Pub.L. 104–132, § 413(a), 110 Stat. 1214 (1996) (codified at 8 U.S.C. § 1231(b)(3)(B)(iv)).

## IV. RELIEF UNDER CAT

■ Bellout argues that the IJ should have granted him deferral of removal under the Convention Against Torture because, he claims, the police will torture him if he returns to Algeria. Article 3 of the United Nations Convention Against Torture or Punishment prohibits removal to a state where there are substantial grounds to believe the alien would be tortured. *Al–Saher v. INS*, 268 F.3d 1143, 1146 (9th Cir.2001). Although barred from "withholding of removal" under CAT, Bellout remains eligible for "deferral of removal" under CAT. 8 C.F.R. § 1208.17(a) (2003). We review the denial of relief under CAT for substantial evidence. *Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir.2003).

■ To be eligible for deferral of removal under CAT, Bellout must establish that he "is more likely than not to be tortured" if he returns to Algeria. 8 C.F.R. § 1208.17(a)(2003); *see also Zheng*, 332 F.3d at 1194. Bellout testified to one incident of abuse by the police in 1994 before he joined GIA. There is no evidence in the record that the Algerian government is aware that Bellout joined GIA or is interested in him. The IJ found that there was no evidence that members of militant groups who leave Algeria will be persecuted or tortured upon return and that Bellout did not meet his burden of establishing it is more likely than not that he will face torture if returned to Algeria. The evidence does not compel a contrary conclusion. *Zheng*, 332 F.3d at 1194.

PETITION FOR REVIEW DISMISSED IN PART AND DENIED IN PART.