Jorge Alejandro SANCHEZ–CABRERA;
Modesta Robledo–Lopez,
Petitioners,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–73716.
Agency Nos. A79–147–121, A79–147–129.

United States Court of Appeals,
Ninth Circuit.

Submitted April 2, 2004.*

Decided April 27, 2004.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Raul E. Godinez, Law Office of Raul E. Godinez, Los Angeles, CA, for Petitioners.

Regional Counsel, Western Region, Immigration & Naturalization Service, Laguna Niguel, CA, District Director, Office of the District Counsel, Department of Homeland Security, San Diego, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Christopher C. Fuller, U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before MAGILL,** TROTT, and CALLAHAN, Circuit Judges.

### MEMORANDUM***

Jorge Alehandro Sanchez–Cabrera and his wife, Modesta Robledo–Lopez, are Mexican citizens who petition for review of a final order of removal from the United States by the Board of Immigration Appeals ("BIA"). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petitions.

Since the BIA summarily affirmed the determination of the Immigration Judge ("IJ") to deny petitioners' applications for asylum, withholding of removal, and relief under the Convention Against Torture, we review the IJ's ruling under the substan-

---

** The Honorable Frank J. Magill, Senior U.S. Circuit Judge for the Eight Circuit, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

tial evidence standard. *Halaim v. INS*, 358 F.3d 1128, 1131 (9th Cir.2004); *Bellout v. Ashcroft*, 363 F.3d 975, 977 & 979, 2004 U.S.App. LEXIS 7032, at *5 and *11 (9th Cir.2004). We may not alter that ruling unless the evidence would compel a reasonable fact-finder to reach a different conclusion. *Halaim*, 358 F.3d at 1131.

■ Viewing petitioners' testimony as credible, a determination which we accept, *see id.*, the IJ nonetheless denied their applications for asylum. The IJ found nothing to confirm petitioners' hunch that the men who threatened them were police officers, and insufficient proof that petitioners' fear of persecution in Mexico was on account of any protected activity or classification. Likewise, the IJ saw no basis for concluding that the Mexican government would be unwilling or unable to protect petitioners.

These conclusions are supported by substantial evidence in the record. Sanchez–Cabrera's testimony allows the inference that the threats his family faced were posed by common criminals and not by police officers. He said he was not acquainted with the men who threatened him, and that they did not wear uniforms or present any credentials. Aside from his own unsupported belief (that the men were police officers because they had guns and said so), there is no indication that these men were agents of the government.

One may also reasonably infer from Sanchez–Cabrera's testimony that the threats were aimed at coercing him, as a police officer, into releasing from jail the menacing bandits' partners in crime—and not designed to perpetuate police corruption. Law-enforcement personnel the world over face the specter of criminal attempts at coercion, but this hazard does not constitute persecution in the immigration context. *See Chanco v. INS*, 82 F.3d 298, 302–03 (9th Cir.1996).

Moreover, while Sanchez–Cabrera mentioned to his supervisor that certain men had visited him at his post to demand liberty for their friends, he made no attempt to report the threats encountered in his home. His supervisor's failure to respond more aggressively to a single instance of verbal threats on the job is not the same thing as governmental acquiescence to death threats posed by four armed men who forcefully enter a police officer's residence. Thus, the record does not compel a conclusion that the persecution came from or was permitted by crooked officials seeking to squelch Sanchez–Cabrera's opposition to corruption.

It is significant that the IJ determined that petitioners were ineligible for asylum, as opposed to finding petitioners eligible but denying such relief in the exercise of discretion. *See Osorio v. INS*, 18 F.3d 1017, 1032–33 (2d Cir.1994). Because petitioners failed to establish statutory eligibility for asylum, they "necessarily [failed] to demonstrate eligibility for withholding of deportation as well.'" *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996).

■ Regarding their application for relief under the Convention Against Torture, petitioners insist they will face persecution if they are returned to Mexico, pointing to the U.S. State Department's Country Reports Regarding Mexico. These Reports, however, do not mention instances of the government abiding the torture of police officers who refuse to cooperate with criminals or corrupt officials. In sum, the evidence does not demand a determination that petitioners faced official persecution in the past, nor does it compel the conclusion that the torture they fear upon return to Mexico would be countenanced by the government there.

■ Finally, petitioners challenge the BIA's decision to streamline their case,

claiming that the IJ failed to discuss unspecified portions of Sanchez–Cabrera's testimony and application, and that the IJ reached an incorrect conclusion. They also insist that errors in the IJ's decision were not harmless, insofar as returning petitioners to Mexico will put them in jeopardy. These arguments are unpersuasive.

For the reasons discussed above, there is no merit to the assertion that the IJ's decision was incorrect, and petitioners point to no error that, if corrected, would require a different result. Similarly, petitioners fail to identify the evidence that they allege the IJ neglected to mention, and cite no authority for the proposition that an IJ must reference any particular data at all. Most importantly, they do not explain how the decision would be different if the IJ had cited the information. Thus, even if we could say that the IJ's findings were erroneous, which we cannot, we are unable to see how they were anything but harmless.

In that vein, petitioners misconstrue the meaning of the term "harmless." If their implied definition were applicable, no error would be harmless, even if the ultimate conclusions were still correct; to wit, the result would be deporting aliens to countries where they allegedly will face problems more severe than those they would encounter if they were allowed to stay. We hold that the IJ's findings are supported by the evidence, and petitioners have not demonstrated that the record compels a contrary conclusion or that the streamlining decision was improper.

PETITIONS DENIED.