

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-26-2005

# Arias v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1999

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Arias v. Atty Gen USA" (2005). *2005 Decisions.* Paper 346.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/346

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-1999

_____

WALTER ANTONIO AMAYA ARIAS,

Petitioner

v.

ALBERTO R. GONZALES,[*]
Attorney General of the United States
DEPARTMENT OF HOMELAND SECURITY;
BUREAU OF IMMIGRATION & CUSTOMS ENFORCEMENT,

Respondents

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A97 133 248)

_____

Argued June 30, 2005

Before:  NYGAARD[**], SMITH and FISHER, *Circuit Judges*.

(Filed October 26, 2005)

_____

[*]Attorney General Alberto R. Gonzales has been substituted for former Attorney General John Ashcroft, the original respondent in this case, pursuant to Fed. R. App. P. 43(c).

[**]Judge Nygaard assumed senior judge status 7/9/05.

Reena Arya (Argued)
Hebrew Immigrant Aid Society
333 Seventh Avenue
New York, NY 10001
 *Attorney for Petitioner*

Douglas E. Ginsburg
John M. McAdams, Jr.
Lyle D. Jentzer (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
 *Attorneys for Respondents*

Seth M.M. Stodder (Argued)
Akin, Gump, Strauss, Hauer & Feld
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
 *Attorney for Amicus-Appellant,*
 *Human Rights First*

_____

AMENDED OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Petitioner Walter Antonio Amaya Arias appeals from the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") decision denying his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). The BIA found that Amaya Arias was inadmissible under 8 U.S.C. § 1182(a)(3)(B) because he "engaged in terrorist activity"

within the meaning of the statute by making payments to a Colombian paramilitary organization designated as a Foreign Terrorist Organization ("FTO") pursuant to 8 U.S.C. § 1189. Amaya Arias argues that an involuntariness or duress defense should be implied in § 1182(a)(3)(B)(iv), and that he has established that defense because he made the payments to the FARC involuntarily. Because we find that there was substantial evidence supporting the BIA's finding that Amaya Arias made the payments voluntarily, we need not address his statutory construction argument, and will deny his petition for review.

I.

As we write solely for the parties, and the facts are known to them, we will discuss only those facts pertinent to our conclusion. Amaya Arias was born in Barranquilla, Colombia, and is a native and citizen of Colombia. In April 2003, using a fraudulent visa, he attempted to enter the United States at Miami International Airport. He was detained by customs officials and placed in removal proceedings. He then applied for asylum and withholding of removal.

Colombia is a constitutional, multiparty democracy with two dominant parties: the Liberal and the Conservative. But the organized Colombian government is relatively weak and in ongoing conflict with several paramilitary groups, including the Revolutionary Armed Forces of Colombia ("FARC"). Particularly relevant to this appeal, the FARC is known to extort so-called "war taxes" from civilians in order to finance its operations. Payment of war taxes is especially common in sections of Colombia

controlled by the FARC. Refusal or inability to pay these war taxes is viewed as an act of political opposition and often results in reprisal.

In 1991, Amaya Arias joined the Colombian police force and was initially posted in an anti-narcotics base where his duties included fighting guerrillas who belonged to the FARC. He quit the police force in 1994 and in 1995, his girlfriend's brother got him a job managing a fish farm in El Morro owned by one Gustavo Guiterrez. At the time he took this job, Amaya Arias knew that the farm was located in an area controlled by the FARC. From his police experience, he also knew that the FARC was a violent, terrorist organization.

Amaya Arias worked at the El Morro farm without incident for several years. In 1997, a man dressed in civilian attire came to the farm, gave Amaya Arias an envelope marked "Armed Revolutionary Forces of Colombia," and told him to give it to Guiterrez. The man did not threaten Amaya Arias in any way. Amaya Arias passed the envelope along to Guiterrez, who later told him that it contained a letter demanding payment to the FARC of a monthly "tax" of 500,000 pesos. Guiterrez directed Amaya Arias to pay the tax on his behalf with funds provided by Guiterrez. Each month, approximately fifty armed FARC guerrillas would come to El Morro, ten of whom would come to the farm. When they arrived, Amaya Arias would pay them. The FARC guerrillas never threatened Amaya Arias, but he was constantly afraid of them and believed they would kill him if he did not pay them. Amaya Arias testified that he never supported or agreed with the

4

FARC's political agenda, but paid the money to the FARC because he was "living very happily with [his] family," and "was making good money at the farm and ... doing well there."

In January 2000, El Morro was infiltrated by members of the United Self-Defense Forces of Colombia ("AUC"), a group at odds with the FARC. AUC members compiled a list of El Morro residents who had made payments to the FARC. In the early morning hours of November 22, 2000, AUC members attacked the suspected collaborators' homes and killed approximately eighteen people. Amaya Arias escaped violence by hiding, but his girlfriend's two brothers were killed, and AUC members pushed his girlfriend around because they were searching for him. Amaya Arias, his girlfriend and his daughter subsequently returned to live in Barranquilla. There is no evidence that the FARC threatened or harmed Amaya Arias or his family following their return to Barranquilla.

The IJ denied Amaya Arias's applications for asylum and withholding of removal on grounds that the payments he made to the FARC rendered him inadmissible under § 1182(a)(3)(B). Section 1182(a)(3)(B)(i) provides that an alien is inadmissible to the United States where he is found to have "engaged in a terrorist activity." Section 1182(a)(3)(B)(iv)(VI)(cc) defines "engage in terrorist activity" as, *inter alia*, the "commi[ssion of] an act that the actor knows, or reasonably should know, affords material support, including ... funds, transfer of funds or other material financial benefit

5

... to a terrorist organization described in clause (vi)(I) or (vi)(II)[.]"[1] The IJ found that this provision applied regardless of whether the conduct at issue was voluntary, and therefore found that Amaya Arias's payments, whether or not voluntary, fell within the provision and mandated a finding of inadmissibility. The BIA agreed with the IJ's statutory construction.

Even though the IJ and BIA focused their discussions on the statutory construction of § 1182(a)(3)(B)(iv), they also made factual findings that support the Attorney General's primary contention on appeal that Amaya Arias acted voluntarily when he made payments to the FARC. The BIA found that "the evidence in the record suggests that the respondent's act was not involuntary." The BIA specifically noted that the IJ had found that Amaya Arias passed money to the FARC at Guiterrez's request, that he had not been threatened by the FARC, and that he did not leave his job on the farm earlier because of the money he earned there. The BIA concluded that "[p]articularly as the respondent apparently did not encounter FARC once he left his job and in light of his reason for not leaving his job earlier, respondent's testimony does not reflect that his acts were wholly involuntary."

---

[1]During the time period in which Amaya Arias made these payments, the FARC was designated by the United States State Department as an FTO. *See* United States Department of State Web Page (http://www.state.gov/s/ct/rls/fs/2003/17067.htm). As such, it was a "terrorist organization" for purposes of § 1182(a)(3)(B)(iv)(cc).

## II.

We begin our discussion with jurisdiction, which we assess *de novo*. *See Valansi v. Ashcroft*, 278 F.3d 203, 207 (3d Cir. 2002) (citation omitted). We have jurisdiction to review the BIA's denial of Amaya Arias's application for withholding of removal pursuant to 8 U.S.C. § 1252(a)(1). We agree with the Attorney General, however, that we lack jurisdiction to review Amaya Arias's CAT claim because he failed to raise it before the BIA. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 594 (3d Cir. 2003) (reasoning that because asylum applicant "failed to raise [ ] issue in his appeal to the Board, we do not have jurisdiction to consider the question.").

The Attorney General also argues that 8 U.S.C. § 1158(b)(2)(D) deprives us of jurisdiction to review the BIA's determination that Amaya Arias is ineligible for asylum because he engaged in terrorist activity. Section 1158(b)(2)(D) provides that "[t]here shall be no judicial review of a determination of the Attorney General under subparagraph (A)(v)." 8 U.S.C. § 1158(b)(2)(D). A "determination of the Attorney General under subparagraph (A)(v)" includes a determination that an alien has provided material support to a terrorist organization within the meaning of § 1182(a)(3)(B)(i). *Id.* at § 1158(b)(2)(A)(v). Because the BIA found Amaya Arias inadmissible for engaging in terrorist activity under 8 U.S.C. § 1182(a)(3)(B)(i), it appears that it made just the determination that § 1158(b)(2)(D) withdraws from the scope of our jurisdiction to review. *See Bellout v. Ashcroft*, 363 F.3d 975, 977 (9th Cir. 2004).

7

Amaya Arias counters that Congress altered the effect of § 1158(b)(2)(D) in the recently enacted REAL ID Act of 2005. *See* Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005). He specifically directs us to § 106(a)(1) of the REAL ID Act, which inserted the following new § 1252(a)(2)(D) into Title 8:

> *Nothing* in subparagraph (B) or (C), or *in any other provision of this chapter* (other than this section) *which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review* filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis added). We discussed this provision in *Papageorgiou v. Gonzales*, 2005 WL 1490454 (3d Cir. June 24, 2005), stating that it reflects Congress's "intent to restore judicial review of constitutional claims and questions of law presented in petitions for review of final removal orders." 2005 WL 1490454, at *2. We found that the new § 1252(a)(2)(D) "repealed all jurisdictional bars to our direct review of constitutional claims and questions of law in final removal orders other than those remaining in 8 U.S.C. § 1252 (e.g., in provisions other than (a)(2)(B) or (C)) following the amendment of that section by the Act." *Id.*

The plain terms of § 1252(a)(2)(D) are satisfied here. Section 1158(b)(2)(D) constitutes a provision of Chapter 12 "which limits or eliminates judicial review[.]" And Amaya Arias's statutory construction claim that § 1182(a)(3)(B)(iv) does not encompass involuntary material support clearly presents "questions of law." We therefore find that we have jurisdiction to review that legal determination. However, the BIA alternatively

held that even if an involuntariness exception exists, Amaya Arias's support was not involuntary. Amaya Arias challenges this determination as well. Because this determination is, as previously noted, a factual one, we would have no jurisdiction to review it if Amaya Arias were only seeking review of the asylum claim. But as previously noted, he is also seeking review of the withholding denial, and we retain jurisdiction to review factual issues pertaining to that claim because the jurisdictional limitation at 8 U.S.C. § 1182(b)(2)(D) does not apply to withholding claims, and therefore does not preclude our review of factual issues pertaining to such claims. Thus, because the availability of withholding of removal turns on the same factual issues that Amaya Arias raised in his asylum claim, we have jurisdiction to reach the merits of his claims, both factual and legal.

### III.

We turn now to the merits of the withholding claim. As noted, Amaya Arias's statutory construction argument depends on his establishing that there was not substantial evidence to support the BIA's finding that he made payments to the FARC voluntarily. "We must uphold the BIA's factual findings if they are supported by substantial evidence." *Singh v. Gonzales*, 406 F.3d 191, 195 (3d Cir. 2005) (citing *Singh-Kaur v. Ashcroft*, 385 F.3d 293, 296 (3d Cir. 2004)). Substantial evidence review "is extremely deferential, setting a 'high hurdle by permitting the reversal of factual findings only when the record evidence would compel a reasonable factfinder to make a contrary

determination.'" *He Chun Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004) (citations and internal quotations omitted).

We find that Amaya Arias has failed to meet this heavy burden. Amaya Arias was never expressly threatened by the FARC, and there was substantial evidence that he remained at the farm not because he feared retribution from the FARC, but rather because he made good money there. There was no evidence that Amaya Arias or his family had any encounters with the FARC after they left El Morro in 2000, which supports the inference that Amaya Arias could have left El Morro earlier without fear of retribution. Indeed, this inference, coupled with Amaya Arias's knowledge of the FARC's tactics, is substantial evidence that Amaya Arias and his family had a reasonable opportunity to leave El Morro before the onset of any possible duress. *Cf. United States v. One 107.9 Acre Parcel of Land Located in Warren Township, Bradford County, Pa.*, 898 F.2d 396, 399 (3d Cir.1990) (stating that "[i]n a criminal law context, ... duress contains three elements[, including] (3) no reasonable opportunity to escape the threatened harm."). At the same time, Amaya Arias fails to point us to evidence which would compel us to reach a conclusion contrary to the BIA's finding that he made payments to the FARC voluntarily. We therefore conclude that substantial evidence supports the BIA's finding that Amaya Arias acted voluntarily when he made payments to the FARC, and will deny the petition for review on this basis.