**Saleh NAGI, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–74665.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 2006.

Filed Aug. 8, 2006.

Howard R. Davis, Esq., Davis Miller & Neumeister, Van Nuys, CA, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of The District Counsel, Department of Homeland Security, San Francisco, CA, Melissa Neiman Kelting, DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: GOODWIN, HUG, and O'SCANNLAIN, Circuit Judges.

## MEMORANDUM *

Saleh Nagi ("Nagi"), a native and citizen of Yemen, entered the United States on tourist visas four times between September 19, 1989, and September 2, 1992. Nagi was authorized to remain no later than March 3, 1993. He failed to depart. The former Immigration and Naturalization Service ("INS") charged Nagi with removability pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted. Nagi admitted the government's factual allegations and conceded removability but applied for relief in the form of political asylum under Section 208 of the Act, withholding of removal to Yemen under Section 241(b)(3) of the Act, and relief under Article III of the Convention Against Torture ("CAT"). Finding Nagi's testimony "not sufficiently detailed, consistent or believable," the IJ denied Nagi's application. The BIA dismissed Nagi's appeal. Nagi now petitions for review of the BIA's dismissal. We deny his petition.

## DISCUSSION

■ We have jurisdiction over Nagi's petition, including Nagi's CAT claim,[1] pur-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Nagi's brief to the BIA cited the CAT. More-

suant to 8 U.S.C. § 1252(a)(1). We review for substantial evidence the BIA's decision that Nagi failed to establish eligibility for asylum or relief under the CAT. *See Njuguna v. Ashcroft,* 374 F.3d 765, 769 (9th Cir.2004) (asylum); *Bellout v. Ashcroft,* 363 F.3d 975, 979 (9th Cir.2004) (CAT). We review for abuse of discretion the BIA's affirmance of the IJ's denial of Nagi's requested continuance. *See De la Cruz v. INS,* 951 F.2d 226, 229 (9th Cir. 1991).

## A. Credibility

■ Substantial evidence supports disbelieving Nagi's story because he told three starkly differently versions of it and failed to harmonize them—one in his written asylum application, another in his asylum interview at the asylum office, and yet another in his oral testimony before the IJ at his removal hearing. Nagi's 1993 written asylum application claimed that Nagi resided in Saudi Arabia and was the victim of harassment by Muslim fundamentalists objecting to Nagi's affiliation with the General People's Congress Party. In contrast, Nagi explained in his asylum interview that he fled to the United States essentially to escape collection of $300,000 in debts that he could no longer satisfy and because he feared prosecution by Yemeni authorities for his illegal money laundering and black market currency exchange businesses. Yet, before the IJ at Nagi's removal hearing, Nagi disavowed any knowledge of and repudiated the contents of his asylum application, acknowledging it to be a complete fabrication, while evading questioning about the legal status of his businesses in Yemen or the likelihood of prosecution by Yemeni authorities should he return. In place of these accounts, Nagi raised for the first time before the IJ the factual scenario to which he now adheres. He alleges arrests, interrogations, and light beatings by Yemeni authorities due to his membership in an opposition political party in 1989.

Nagi's admission that he intentionally falsified his asylum application—or, at best, that he sought a U.S. work permit with knowing indifference to the truth of the statements he made to obtain it—alone supports the IJ's adverse credibility determination. But Nagi's trustworthiness is marred further by his lie under oath about not being arrested in Reno, Nevada, for child abandonment or child neglect. Indeed, the IJ found it "clear from the record" that Nagi had made "willful and fraudulent misrepresentations in order to obtain an Immigration benefit."

Even if we disagreed, the dramatic inconsistencies among Nagi's three stories are hardly minor. They relate to the basis for Nagi's alleged fear of persecution, and, as a result, "involved the heart of [his] asylum claim." *Ceballos–Castillo v. INS,* 904 F.2d 519, 520 (9th Cir.1990).

Disavowing his asylum application entirely, Nagi invites us simply to ignore the "bad debts" account he gave to the asylum officer. But, as the IJ suggests, this is Nagi's most plausible account. It is also incompatible with asylum or withholding of removal. After all, neither avoidance of prosecution for illegal, black market enterprises nor concern about violent reprisals for substantial, unpaid debts amounts to fear of "persecution"—and certainly not on any of the enumerated grounds. Moreover, even if the story Nagi articulated to the IJ was his only one, Nagi offered

over, the BIA actually addressed Nagi's CAT claim. Together, this is ample evidence that Nagi put the BIA on notice of, and that the BIA had (and took) the opportunity to resolve, Nagi's CAT issue. *See Ladha v. INS,* 215 F.3d 889, 903 (9th Cir.2000); *Zhang v. Ashcroft,* 388 F.3d 713, 721 (9th Cir.2004) (per curiam).

insufficient corroborating evidence to ameliorate numerous logical problems affecting its plausibility. Thus, the BIA's affirmance of the IJ's adverse credibility determination was supported by substantial evidence.

 Naturally, such a powerful adverse credibility determination is fatal not only to Nagi's asylum and withholding of removal claims, but his CAT argument as well. Yet, even if credible, Nagi's reports of multiple, open-handed slaps of insufficient severity to require medical attention or leave a visible mark could not, without more, sustain a CAT claim.

### B. Continuance

Nagi also claims that he was denied due process when the IJ refused to "reset the hearing" so Nagi's sole expert could appear in court. However, Nagi received a full and fair hearing and a reasonable opportunity to produce witnesses of his choice. Nagi's removal hearing had been on the Immigration Court calendar for approximately three years, and the hearing date had been previously rescheduled on more than one occasion. As the IJ noted, Nagi's counsel was "clearly advised ... that [January 31, 2002] was going to be the hearing on the asylum application and that the parties should be ready to proceed with their testimony." At the hearing, the IJ received all the evidence and heard all the testimony that Nagi was prepared to offer. Moreover, Nagi's counsel did not clearly object to proceeding in the absence of the absent expert. In any case, Nagi failed to demonstrate that the outcome of his case would have changed had the continuance been granted. Accordingly, the IJ's denial of Nagi's motion

for a continuance was not an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we DENY Nagi's petition.