**Fredy Horacio POSADA–MARTINEZ,**
**Petitioner**

v.

**ATTORNEY GENERAL OF**
**the UNITED STATES.**

No. 09–1102.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) March 10, 2010.

Opinion filed: March 11, 2010.

Michael J. Hampson, Esq., Natalie J. Kraner, Esq., Alan S. Modlinger, Esq., Lowenstein Sandler, Roseland, NJ, for Petitioner.

Paul Fiorino, Esq., Thomas W. Hussey, Esq., Andrew J. Oliveira, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, Michael B. Mukasey, Esq., Debevoise & Plimpton, New York, NY, for Attorney General of the United States.

Before: McKEE, HARDIMAN and COWEN, Circuit Judges.

## OPINION

PER CURIAM.

Fredy Horacio Posada–Martinez petitions for review of an order of the Board of Immigration Appeals (BIA). For the reasons below, we will grant the petition for

review and remand the matter to the BIA to address Posada–Martinez's motion to remand with respect to his claim under the Convention Against Torture (CAT).

Posada–Martinez, a native of Colombia, entered the United States in December 2005. He was charged as removable as an alien without valid entry documents. He conceded removability and applied for asylum, withholding, and CAT relief. He argued that he had been threatened in Colombia by the guerrillas of the Revolutionary Armed Forces of Colombia (FARC) on account of his political opinion and his membership in a particular social group. After a hearing, the IJ found Posada–Martinez credible but denied relief. Posada–Martinez appealed to the BIA and filed a motion to remand based on his brother's murder in Colombia.

The BIA dismissed the appeal. It concluded that the threats and physical assault Posada–Martinez experienced in the past were not severe enough to constitute persecution. The BIA concluded that the IJ's determination that the guerillas were only interested in Posada–Martinez's money was not clearly erroneous. The BIA rejected Posada–Martinez's argument that he was targeted by the guerrillas because he was a union leader or based on an actual or imputed political opinion. The BIA denied Posada–Martinez's motion to remand based on his brother's murder in Colombia. It determined that the murder did not constitute persecution and that Posada–Martinez was unable to show that one central reason for his brother's death was on account of a protected ground. Posada–Martinez filed a timely petition for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252. To establish eligibility for asylum, Posada–Martinez must demonstrate either past persecution or a well-founded fear of future persecution on ac-count of race, religion, nationality, membership in a particular social group, or political opinion. *See Vente v. Gonzales,* 415 F.3d 296, 300 (3d Cir.2005). He needs to show that the protected ground was or will be at least one central reason for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i). For withholding of removal, he must demonstrate that it was more likely than not that his life would be threatened in Colombia on account of one of these protected grounds. *Tarrawally v. Ashcroft,* 338 F.3d 180, 186 (3d Cir.2003); 8 U.S.C. § 1231(b)(3)(A). To be eligible for withholding of removal under the Convention Against Torture, Posada–Martinez needs to show that it is more likely than not that he would be tortured if removed to Colombia. 8 C.F.R. § 208.16(c)(2).

We review the BIA's factual determinations under the substantial evidence standard. *Dia v. Ashcroft,* 353 F.3d 228, 249 (3d Cir.2003)(en banc). The BIA's findings are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We exercise *de novo* review over the BIA's legal decisions. *Toussaint v. Attorney General,* 455 F.3d 409, 413 (3d Cir.2006).

At his hearing, Posada–Martinez testified that he had worked on his family's farm and had been the president of a community group called the Union for Community Action (Union). A.R. at 129. He stated that his first direct encounter with the guerillas was in August 2004. The guerillas were friendly, asked him how things were on the farm and at the Union, and stated that they wanted an economic or financial collaboration. A.R. at 134. Posada–Martinez believed their request was extortion but did not take it seriously or pay them any money. He testified that during a subsequent encounter the guerillas told him if he did not pay, they would

harm him and his family. The guerillas asked for approximately $50,000. A.R. at 135. Posada–Martinez believed that the guerillas thought he had access to money because the farm was going well and he had access to the Union's money. He stated that during the most hostile encounter he was hit on the shoulders with the back of a gun. A.R. at 136. Posada–Martinez had no contact with the guerillas while the military was patrolling the area during May and June of 2005 but they returned once the military left. A.R. at 136–37.

Posada–Martinez submitted documents to support his claims. In a letter dated May 2005, the guerillas stated that they had heard that Posada–Martinez was influential in his job. They stated that he must pay one hundred million pesos within forty-five days. They indicated that they knew he had access to the budget of the Union. They warned him that if he went to the police, he and his family would pay the consequences. A.R. at 189. In July 2005, Posada–Martinez received another communication from the guerillas asking for money. In a letter dated August 28, 2005, the guerillas noted that he had not complied with their last request and that he should consider himself their "military objective" for not fulfilling his duty. A.R. at 192. In response, Posada–Martinez moved to another city. When his former employees told him that the guerillas were looking for him, he left and came to the United States.

*Past Persecution*

■ Posada–Martinez argues that he is entitled to asylum based on past persecution on account of his membership in a particular social group of landowning

farmers and community leaders. We need not reach the question of whether the threats made against Posada–Martinez constituted past persecution or whether union leaders [1] may be considered a particular social group. He is unable to show that the record compels a finding that his membership in a particular social group was a central reason for any past persecution. The BIA determined that the guerrillas' inquiry into Posada–Martinez's position in the Union did not show that his position was a central reason for their actions. The BIA upheld the IJ's finding that the guerrillas were interested only in Posada–Martinez's money. This finding is supported by the evidence described above.

Posada–Martinez argues that he testified that the guerrillas targeted him because he ran the farm and was president of the Union. He also points out that the guerrillas noted that he was influential in his job. However, this statement was followed by a demand for money and the guerrillas noting that they knew Posada–Martinez had access to the Union's money. A.R. at 189. The guerrillas' statement regarding Posada–Martinez's influence at the Union does not compel a finding that his union leadership was a central reason for the guerrillas' treatment of him.

*Future persecution*

■ Posada–Martinez contends that he has established a well-founded fear of future persecution on account of his membership in a particular social group of landowners and union leaders who have resisted FARC's threats and fled. However, as noted earlier, Posada–Martinez argued before the BIA that the social group he belonged to was union leaders.[2]

---

1. We agree with the government that Posada–Martinez did not exhaust his argument that the guerrillas targeted him based on his status as a landowner.

2. The IJ noted that Posada–Martinez had not identified any particular social group to which he belonged. A.R. at 70.

As discussed above, the BIA determined that the guerrillas were interested only in Posada–Martinez's money, and we conclude that the record does not compel a finding that he will be persecuted based on his status as a union leader.

▪■ Posada–Martinez also argues that he had a well-founded fear of persecution on account of an imputed political opinion. He contends that it is self-evident that the guerrillas will attribute an anti-FARC political opinion to him because he did not comply with their demands. However, the Supreme Court has rejected a similar argument—that a guerrilla organization's attempt to conscript a person necessarily constituted persecution on account of political opinion. *I.N.S. v. Elias–Zacarias,* 502 U.S. 478, 482, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

Posada–Martinez quotes from our non-precedential opinion in *Arias v. Gonzales,* 143 Fed.Appx. 464 (3d Cir.2005) as support for his argument that his refusal to give money to the FARC guerrillas will cause them to impute an anti-FARC political opinion. "[T]he FARC is known to extort so-called 'war taxes' from civilians in order to finance its operations. Payment of war taxes is especially common in sections of Colombia controlled by the FARC. Refusal or inability to pay these war taxes is viewed as an act of political opposition and often results in reprisal." *Id.* at 465. We are not bound by dicta from opinions that are not precedential. 3rd Cir. I.O.P. 5.7; *see also* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based.").

Posada–Martinez asserts that the fact that the guerrillas labeled him a "military objective" demonstrates that the guerrillas imputed an anti-FARC political opinion to him. However, this is not sufficient to demonstrate that a reasonable fact-finder would be compelled to find that the guerrillas targeted him based on his political opinions.

*Relief under the Convention Against Torture* [3]

■ The BIA concluded that Posada–Martinez had waived his claim to CAT relief because he failed to raise it on appeal. The only mention of CAT relief in his brief before the BIA was in the penultimate sentence. "Based on the arguments detailed above, Respondent [ ] requests that he be granted asylum, withholding of removal and/or protection under the Convention Against Torture." A.R. at 45. Citing *Hoxha v. Holder,* 559 F.3d 157, 163 (3d Cir.2009), Posada–Martinez contends that his reference to CAT relief was sufficient to exhaust the issue. In *Hoxha,* the petitioner explicitly challenged the IJ's denial of his motion for a continuance in his notice of appeal: "The Immigration Judge erred in denying [the] request for a continuance as his previous attorney withdrew just prior to his individual hearing. For this reason, [Hoxha's] counsel was not able to assist him in preparing his claim." *Id.* at 158. However, the petitioner failed to raise the issue in his brief before the BIA. We held that he had sufficiently exhausted the issue. "[T]he identification of an issue in a party's notice of appeal satisfies the statutory requirement of exhaustion provided that the description of that issue in the notice sufficiently apprises the BIA of the basis for the appeal." *Id.* at 159.

■ Here, Posada–Martinez merely requested relief under the CAT. He made no argument as to why he was entitled to

**3.** Posada–Martinez also applied for withholding of removal. Because he has not met the standard for asylum, he cannot meet the higher standard for withholding of removal. *Ghebrehiwot v. Att'y Gen.,* 467 F.3d 344, 351 (3d Cir.2006).

relief, nor did he challenge the IJ's denial of CAT relief in any way.[4] His passing reference to CAT relief did not give the BIA sufficient notice of the basis for his appeal of the denial of CAT relief. Thus, he failed to exhaust this issue, and we lack jurisdiction to review it. 8 U.S.C. § 1252(d)(1).

*Motion to remand*

 Posada–Martinez challenges the BIA's denial of his motion to remand. He submitted evidence that his brother had been murdered in the same area where he himself had been threatened by the guerrillas. The BIA noted that there was no indication as to why his brother was killed and that Posada–Martinez was unable to demonstrate that one central reason for his brother's death was on account of a protected ground.

A motion to remand is the functional equivalent of a motion to reopen. *Korytnyuk v. Ashcroft*, 396 F.3d 272, 282 (3d Cir.2005). Under 8 C.F.R. § 1003.2(c), the BIA may not grant a motion to reopen unless the evidence offered is material and previously unavailable. While Posada–Martinez argues that the BIA wrongly decided that he had not conclusively established his eligibility for asylum, we believe that the BIA denied the motion to remand on the ground that the evidence offered was not material to the issue of whether any alleged persecution was or would be on account of a protected ground. We review the BIA's denial of a motion to remand on that basis for an abuse of discretion. *INS v. Abudu*, 485 U.S. 94, 105, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). Under an abuse of discretion standard, we

will reverse the BIA's decision only if it is "arbitrary, irrational, or contrary to law." *Sevoian v. Ashcroft*, 290 F.3d 166, 174 (3d Cir.2002). We conclude that the BIA did not abuse its discretion in denying the motion to remand with respect to Posada–Martinez's claims for asylum and withholding of removal. The new evidence does not support his claims that he was or will be persecuted on account of a protected ground.

However, the BIA did not address this new evidence with respect to the CAT claim. To receive relief under the CAT, Posada–Martinez need not show that any torture will be on account of a protected ground. *Gomez–Zuluaga v. Att'y Gen.*, 527 F.3d 330, 349 (3d Cir.2008). While Posada–Martinez waived any challenge to the IJ's denial of CAT relief based on the record before the IJ, he did raise the issue of whether his new evidence was sufficient to support a remand to the IJ. Because the BIA failed to address whether the CAT claim should be remanded to the IJ in light of Posada–Martinez's new evidence, we will grant the petition and remand the matter to the BIA to address this limited issue. In all other respects, we will affirm the BIA's decision.

4. The IJ noted in his opinion that Posada–Martinez had not specifically mentioned torture. A.R. at 68.