# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HERNAN ISMAEL DELGADO,
                    *Petitioner,*

v.

ERIC H. HOLDER, JR.,* Attorney
General,
                    *Respondent.*

No. 03-74442

Agency No.
A78-461-226

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued November 18, 2005
Submitted June 20, 2008
Pasadena, California

Filed April 17, 2009

Before: William C. Canby, Jr., Eugene E. Siler, Jr.,** and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Canby;
Partial Concurrence and Partial Dissent by Judge Berzon

---

*Eric H. Holder, Jr. is substituted for his predecessor, Michael B. Mukasey, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

## COUNSEL

Niels W. Frenzen, University of Southern California Gould School of Law, Los Angeles, California, pro bono counsel for the petitioner.

Jennifer Levings; Norah Ascoli Schwarz, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

## ORDER

Delgado's petition for panel rehearing is GRANTED. This court's opinion of October 8, 2008, reported at 546 F.3d 1017, and the dissenting opinion thereto, are hereby WITH-DRAWN. A new opinion and new concurring and dissenting opinion are filed contemporaneously with this order. Delgado's petition for en banc rehearing remains pending with regard to all issues except his asylum claim, which is moot. Further petitions for panel or en banc rehearing may be filed with regard to the new majority opinion in accordance with Fed. R. App. P. 35 & 40, and 9th Cir. R. 40-1.

## OPINION

CANBY, Circuit Judge:

Hernan Ismael Delgado petitions for review of a decision of the Board of Immigration Appeals ("BIA") ordering him removed to his native El Salvador. The BIA denied Delgado's applications for asylum, withholding of removal, and withholding under the Convention Against Torture ("CAT withholding"), finding that Delgado's three prior offenses of driving under the influence ("DUI"), which were not aggravated felonies, constituted "particularly serious crimes" that made him ineligible for those forms of relief.[1] The BIA also found Delgado ineligible for deferral of removal under the Convention Against Torture ("CAT deferral") because he failed to demonstrate the requisite likelihood of future torture.

We grant in part and deny in part Delgado's petition for review. We defer to the BIA's view that, for purposes of withholding of removal, the applicable statute permits the Attorney General to decide by adjudication that an alien's

---

[1]All three convictions were for felony DUI. One involved an injury accident, and two resulted in prison terms of less than five years.

individual crime is "particularly serious" even though that crime is not classified as an aggravated felony. We also conclude that, for purposes of asylum, the Attorney General may determine by adjudication that a crime is "particularly serious" without first so classifying it by regulation.

We further hold that we are without jurisdiction to review the merits of that "particularly serious crime" determination for purposes of withholding of removal, but conclude that we have jurisdiction to review the determination for purposes of asylum. We conclude that Delgado's DUI convictions do not qualify as "particularly serious" crimes, and we therefore remand Delgado's asylum application to the BIA for further proceedings.

Finally, we hold that substantial evidence supports the decision of the BIA that Delgado failed to meet his burden of proving that he is more likely than not to be tortured if returned to El Salvador.

### *Background*

Delgado, a native and citizen of El Salvador, entered the United States on a nonimmigrant visitor visa over twenty years ago. In July 2001, the Immigration and Naturalization Service ("INS")[2] initiated removal proceedings against him because he had overstayed his visa. Delgado conceded removability but sought asylum, withholding of removal, and CAT withholding and deferral.[3] The Immigration Judge ("IJ") denied Delgado's request for CAT deferral, finding that Del-

---

[2]Effective March 1, 2003, the functions of the INS were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). This transfer has no effect on the review of Delgado's case.

[3]Delgado also sought cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), and suspension of deportation, but he has not sought review of the denial of those forms of relief.

gado had failed to show that he was more likely than not to be tortured if removed to El Salvador. The IJ also found that each of Delgado's three prior felony DUI convictions constituted "particularly serious crimes" that barred him from eligibility for asylum under 8 U.S.C. § 1158(b)(2)(A)(ii), withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii), and CAT withholding under 8 C.F.R. § 1208.16(d)(2). The BIA affirmed the decision of the IJ in an unpublished per curiam decision signed by one member, and this appeal followed.

## *Discussion*

The BIA did not specify whether it reviewed *de novo* the IJ's decision, but stated that it agreed with the IJ on the basis of "the record before [it]." The BIA's simple statement of a conclusion, without analysis, suggests that it relied significantly on the IJ's decision. In such situations, we review the decision of the BIA and look to the IJ's oral decision "as a guide to what lay behind the BIA's conclusion." *See Avetova-Elisseva v. INS*, 213 F.3d 1192, 1197 (9th Cir. 2000).

## I.   The "particularly serious crime" bar

The ultimate issue raised by Delgado is whether the BIA erred in deciding that his DUI convictions constituted "particularly serious crimes" that made him ineligible for withholding of removal and asylum. A major threshold question is whether the applicable statutes permit the agency to determine Delgado's offenses to be "particularly serious" by individual adjudication not limited by certain statutory or regulatory requirements. We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review this question of law. *Afridi v. Gonzales*, 442 F.3d 1212, 1218 (9th Cir. 2006).

Although the issue of scope of the Attorney General's authority (and that of the BIA as his delegate) to determine that an alien's crime is "particularly serious" arises with

regard to both withholding of removal and asylum, the statutory context differs for each form of relief and raises distinctive legal subissues. We therefore treat the two forms of relief separately.

### A. *Withholding of Removal*

[1] An alien is ineligible for withholding of removal if, among other things, "the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States."[4] 8 U.S.C. § 1231(b)(3)(B). For the purposes of this provision,

> an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

*Id*. The question that naturally arises from this plain text is whether the last sentence is meant to limit the Attorney General to the universe of aggravated felonies described in the preceding sentence or, conversely, whether the last sentence simply preserves the Attorney General's authority to determine a crime to be particularly serious regardless of the pen-

---

[4]We have upheld the BIA's interpretation of this statute to require "only the factual finding of conviction of a particularly serious crime to support the determination of danger to the community," without the necessity of a separate finding of such danger. *Ramirez-Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir. 1987). We therefore confine our analysis here to the question of "particularly serious" crimes, and omit any separate consideration of danger to the community.

alty *or its designation or non-designation as an aggravated felony.*

**[2]** At the time the present appeal was argued, the BIA had not addressed this issue in a precedential opinion, in this case or any other. An unpublished decision by a single BIA member is not entitled by itself to the deference prescribed by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012-14 (9th Cir. 2006). Recently, however, a three-member panel of the BIA issued an extensive published opinion holding that § 1231(b)(3)(B) permits the Attorney General to decide by case-by-case adjudication that individual crimes are "particularly serious" even though they are not aggravated felonies. *Matter of N-A-M-*, 24 I. & N. Dec. 336, 338-39 (BIA 2007). Such a precedential opinion is entitled to *Chevron* deference. *See Garcia-Quintero*, 455 F.3d at 1012. For reasons that we now set forth, we conclude that the BIA's interpretation of § 1231(b)(3)(B) is reasonable, and we accordingly defer to it.[5]

Two other circuits, which addressed the issue before the BIA weighed in with a precedential opinion, reached opposite results. The Third Circuit, applying a textual and structural approach, concluded that an offense "must be an aggravated felony to be 'particularly serious.' " *Alaka v. Attorney General of the United States*, 456 F.3d 88, 104-05 (3d Cir. 2006), *cert. dismissed*, 128 S. Ct. 828 (2007). The court reasoned that the sentence allowing the Attorney General to determine that a crime is particularly serious "notwithstanding the length of sentence imposed," 8 U.S.C. § 1231(b)(3)(B), "explicitly

---

[5]In *Morales v. Gonzales*, we assumed without analysis that the Attorney General could deem a non-aggravated felony "particularly serious." 478 F.3d 972, 980-81, 983 (9th Cir. 2007). There, we remanded to the BIA for a redetermination, based on the correct legal standard, of whether Morales's non-aggravated felony constituted a "particularly serious crime." *Id.* at 983. Because the statutory interpretation of § 1231(b)(3)(B) is squarely contested here, we address the issue in depth for the first time.

refers back to the 'previous sentence,' and accordingly implies that [the Attorney General's authority] is limited to aggravated felonies." *Id.* The Seventh Circuit disagreed, concluding that "the absence of a . . . provision for nonaggravated-felony crimes does not imply that only aggravated felonies can qualify as 'particularly serious' crimes." *Ali v. Achim*, 468 F.3d 462, 470 (7th Cir. 2006), *cert. dism.*, 128 S. Ct. 828 (2007).

[3] The BIA found persuasive the Seventh Circuit's view that the designation of certain aggravated felonies as *per se* "particularly serious" does not preclude the Attorney General from deciding, on a case-by-case basis, that other, non-aggravated felony crimes are also "particularly serious." The BIA's adoption of this position was reasonable. The statute does not limit the definition of "particularly serious" crimes to aggravated felonies. Nor does it expressly require the Attorney General, when considering whether a crime that is not categorically barred is "particularly serious," to consider only aggravated felonies where the sentence imposed was less than five years.

The legislative history of the particularly serious crime bar, referred to by the BIA in *N-A-M-*, 24 I. & N. Dec. at 339 340, supports this interpretation. In 1980, § 243(h) of the Immigration and Nationality Act was amended to deny withholding to an individual who "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." Pub L. No. 96-212, § 202, 94 Stat. 102 (1980). Under this provision, the BIA determined on a case-by-case basis which crimes were particularly serious, applying the balancing test of *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982).[6] This test did not take into

---

[6]The BIA looked "to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Frentescu*, 18 I. & N. Dec. at 247.

account whether the crime in issue had been statutorily defined as an "aggravated felony." In time, the BIA denominated some crimes as inherently particularly serious, so that individual determinations with regard to those crimes did not have to be undertaken. *See*, *e.g.*, *Matter of Garcia-Garrocho*, 19 I. & N. Dec. 423, 425 (BIA 1986).

The statutory provision barring those convicted of "particularly serious" crimes from eligibility for withholding of removal then was amended three times. The Immigration Act of 1990 (the "1990 Act") added the following language to § 243(h): "an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime." Pub. L. No. 101-649, 104 Stat. 4978, 5053. Nothing in the text or history of the 1990 Act suggests that Congress intended, by making aggravated felonies *per se* "particularly serious crimes," to divest the Attorney General of his authority to determine, on a case-by-case basis, that other crimes were "particularly serious," depending on the circumstances of their commission, among other things. And, notwithstanding the 1990 Act, the agency understood that it could adjudicate a crime to be "particularly serious" on a case-by-case basis. *See Ahmetovic v. INS*, 62 F.3d 48, 52 (2d Cir. 1995) (agreeing with BIA's conclusion that a crime need not be an aggravated felony to be adjudicated "particularly serious"); *Matter of B-*, 20 I. & N. Dec. 427, 430-31 (BIA 1991) (applying *Frentescu* factors under the 1990 Act to determine that the alien had been convicted of a particularly serious crime).[7]

---

[7]The long history of case-by-case determination of "particularly serious" crimes bears more weight, in our view, than the canons of construction relied upon by the dissent. Canons of statutory construction "are tools designed to help courts better determine what Congress intended, not to lead courts to interpret the law contrary to that intent." *Scheidler v. Nat'l Org for Women*, 547 U.S. 9, 23 (2006). *See also Chickasaw Nation v. United States*, 534 U.S. 84, 93-95 (2006).

Congress relaxed the *per se* category created by the 1990 Act in 1996 with the passage of section 413(f) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1269 (1996) ("AEDPA"). The AEDPA amended § 243(h) to allow the Attorney General, "in [his] discretion," to override the categorical bar designating all aggravated felonies "particularly serious" when "necessary to ensure compliance with the 1967 United Nations Protocol Relating to the Status of Refugees." *Id.*[8] The categorical bar was again relaxed later that year with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-602 ("IIRIRA"). IIRIRA enacted the provision at issue here, which limits application of the categorical bar to aggravated felons sentenced to 5 years' or more imprisonment. *Id.*

**[4]** We recognize that one of the aims of Congress in enacting the post-1990 statutory amendments was probably to avoid sweeping minor crimes into the *categorical* aggravated felony bar. But nothing in the legislative history indicates that Congress intended, by creating a categorical bar and by later relaxing that categorical bar, to eliminate the Attorney General's pre-existing discretion to determine that, under the circumstances presented by an individual case, a crime was "particularly serious," whether or not the crime was an aggravated felony. We therefore find the BIA's interpretation of the statute reasonable, and conclude that the BIA was entitled to

---

[8]Although the legislative history is sparse, there seems to be no doubt that one purpose of this enactment was to prevent violations of the Refugee Convention's *non-refoulement* provision that might occur because of a rigid application of the aggravated felony bar. *See Matter of Q-T-M-T-*, 21 I. & N. Dec. 639, 648 n.4 (BIA 1996). Such treaty violations were becoming more likely because, at the time, the list of aggravated felonies was expanding, and a categorical bar could have included "fairly minor offenses" in its sweep. *Id.* (internal quotations and citation omitted)*; see also Choeum v. INS*, 129 F.3d 29, 42-44 (1st Cir. 1997) (accepting INS's argument that 1996 amendments were fueled by expansion of the term "aggravated felony").

determine, by adjudication, that Delgado's DUI convictions were particularly serious crimes that barred him from eligibility for withholding of removal under 8 U.S.C. § 1231(b)(3)(B) and CAT withholding under 8 C.F.R. § 1208.16(d)(2).

B. *Asylum*

**[5]** We now turn to whether the BIA was authorized to determine that Delgado's crimes were "particularly serious" for the purposes of his asylum application.[9] Just as in the context of withholding, the relevant statute provides that an alien is ineligible for asylum if the Attorney General determines that "the alien, having been convicted of a particularly serious crime, constitutes a danger to the community." 8 U.S.C. § 1158(b)(2)(A)(ii). For the purposes of this provision, "an alien who has been convicted by a final judgment of an aggravated felony shall be considered to have been convicted of a particularly serious crime." 8 U.S.C. § 1158(b)(2)(B)(i). In addition, "[t]he Attorney General may designate by regulation offenses that will be considered to be a [particularly serious] crime . . . ." 8 U.S.C. § 1158(b)(2)(B)(ii).

**[6]** There seems little question that this last provision permits the Attorney General to make particular crimes *categorically* "particularly serious" even though they are not aggravated felonies. The provision would be wholly redundant if the Attorney General were confined to making only aggravated felonies "particularly serious" crimes by regulation. The different question posed by this asylum statute is whether the Attorney General can determine by adjudication that an individual alien's crime was "particularly serious," or

---

[9]The BIA's precedential decision in *N-A-M-* did not address § 1158(b)(2)(B)(I) because the asylum application in that case was untimely. We therefore have no precedential decision of the BIA to be accorded *Chevron* deference on the precise asylum question presented here.

whether he must first by regulation provide that the particular crime is to be so characterized.

Our discussion of the withholding statute is instructive. Just as with withholding, the agency initially made the determination whether an alien's crime was particularly serious strictly by adjudication, applying the *Frentescu* factors. *See Frentescu*, 18 I. & N. Dec. at 247. Congress intervened in the 1990 Act only to ensure that certain crimes (aggravated felonies) would be *categorically* determined to be "particularly serious," regardless of the circumstances of their commission.[10] Congress then added its permission for the Attorney General in asylum cases to "designate by regulation offenses that will be considered to be [particularly serious crimes]." *Id.* It is most reasonable to interpret this provision as similarly concerned with the *categorical* designation of additional crimes as "particularly serious." Indeed, it would be difficult to designate by regulation crimes that "will be considered" to be particularly serious unless the designation is categorical for those crimes. The provision simply does not speak to the ability of the Attorney General to determine in an individual case that the circumstances of an alien's commission of a crime made that crime particularly serious, even though the same offense committed by other persons in other circumstances would not necessarily be particularly serious. The statute does not require the Attorney General to anticipate his adjudication by a regulation covering each particular crime. *See Ali*, 468 F.3d at 469.

**[7]** We therefore conclude that the BIA did not err in proceeding to determine by adjudication, in the absence of regulation, whether Delgado had committed a "particularly serious" crime that rendered him ineligible for asylum.

---

[10]As we described in the previous section, Congress relaxed its categorical bar somewhat with regard to withholding of removal. It did not do so with regard to asylum.

C. *The merits of the BIA's decision*

1. *Withholding of Removal*

The next question for decision is whether we may review the merits of the BIA's determination that Delgado's DUI convictions were "particularly serious crimes." With regard to withholding of removal, we conclude that we may not.[11]

**[8]** We are statutorily precluded from reviewing decisions of the Attorney General "the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . , other than the granting of relief under section 1158(a) of this title [relating to asylum]." 8 U.S.C. § 1252(a)(2)(B)(ii). In *Matsuk v. INS*, 247 F.3d 999 (9th Cir. 2001), we were presented with a determination by the BIA that an aggravated felony resulting in a sentence of less than five years imprisonment was a "particularly serious" crime. We held that the BIA's ruling was an unreviewable discretionary decision within the meaning of the statutory bar. *See id.* at 1002. In later explaining this ruling, we stated:

> [T]he decision at issue in *Matsuk* — whether to classify an alien's past offense as a 'particularly serious crime' under § 1231(b)(3)(B) — is a decision that is entirely lacking in statutory guidelines. Under the language of the statute, this decision is left entirely to the discretion of the Attorney General, with no governing statutory standards.

---

[11]Other circuits have split on this issue. The Seventh Circuit holds that it is without jurisdiction to review the merits of the determination of an alien's crime to have been "particularly serious," for purposes of both asylum and withholding of removal, *see Ali,* 468 F.3d at 470, but the Third Circuit took a contrary position in a case involving withholding of removal, *Alaka*, 456 F.3d at 94-101, as did the Second Circuit with regard to both asylum and withholding of removal, *Nethagani v. Mukasey*, 532 F.3d 150, 154 (2d Cir. 2008).

*Spencer Enters., Inc. v. United States*, 345 F.3d 683, 690 (9th Cir. 2003). The language that *Matsuk* and *Spencer* found to "specify" the authority to be discretionary in the Attorney General, within the meaning of § 1252(a)(2)(B)(ii), was the statutory provision denying withholding "if the Attorney General decides that . . . an alien has been convicted of a particularly serious crime."[12] 8 U.S.C. § 1231(b)(3)(B); *see also Spencer*, 345 F.3d at 689-90.

**[9]** After the decisions in *Matsuk* and *Spencer*, Congress enacted the REAL ID Act of 2005, which provides that nothing in the provision limiting review of the Attorney General's discretionary decisions "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). Our decisions subsequent to the REAL ID Act make clear, however, that the ultimate determination by the Attorney General that a crime is "particularly serious" for purposes of withholding of removal is still an unreviewable discretionary decision. We so stated in *Unuakhaulu v. Gonzales*, 416 F.3d 931, 935 (9th Cir. 2005). Then, in *Afridi v. Gonzales*, 442 F.3d 1212 (9th Cir. 2006), we were presented with a case where the IJ had denied withholding of removal on the ground of conviction of a "particularly serious crime," but had failed to engage in a case-specific application of the *Frentescu* factors. *Id.* at 1219. We determined that this failure raised a point of law, and we remanded for further proceedings. *Id.* at 1219-21. In doing so, however, we recognized the limits of the question of law that we were deciding: "While we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine whether the BIA applied the correct legal standard in making its determination." *Id.* at 1218.[13] A

---

[12] Judge Berzon's concurring and dissenting opinion here offers trenchant and, to us, persuasive criticisms of this ruling of *Matsuk*. As her opinion recognizes, however, we are bound as a three-judge panel to follow *Matsuk*.

[13] Delgado contends that the IJ committed legal error by applying the bar of "particularly serious crime" retroactively to his 1992 DUI conviction.

fair reading of *Afridi* is that the ultimate determination of the "particularly serious" nature of a crime for purposes of withholding of removal is not subject to our review.

**[10]** Most recently, we decided in *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007), that in preserving our authority to review questions of law, the REAL ID Act permitted us to review mixed questions of law and fact. *Id.* at 654. *Ramadan* made clear, however, that the REAL ID Act did not "restore [our] jurisdiction over discretionary determinations." *Id.* And it gave as an example of a statutorily-specified discretionary determination the "Attorney General's determination . . . that an aggravated felony is a particularly serious crime," citing *Matsuk*. *Id.* at 655. It seems clear under our precedent, therefore, that the authority to review questions of law or mixed questions of law and fact under the REAL ID Act did not include a power to review a determination of the Attorney General that a crime was "particularly serious" for purposes of withholding of removal.

### 2. *Asylum*

**[11]** Our circuit precedent is quite different, however, with regard to eligibility for asylum. In *Morales v. Gonzales*, 478 F.3d 972 (9th Cir. 2007), the petitioner had been denied both asylum and withholding of removal on the ground that she had been convicted of a particularly serious crime. We noted that § 1252(a)(2(B)(ii) stripped us of jurisdiction to review any action of the Attorney General "specified" to be in his discretion, "other than the granting of relief under section 1158(a). . . ." Section 1158(a) governs the application of

---

Delgado did not present this argument to the BIA, however, and we therefore may not consider it. *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1183 (9th Cir. 2001). We note as well that the regulation barring relief on the ground of "particularly serious crimes" was first promulgated in 1990, well before Delgado pleaded guilty to his first DUI charge. *See Kankamalage v. INS*, 335 F.3d 858, 860 (9th Cir. 2003). Later statutory bars to the same effect preceded Delgado's last two DUI convictions. *See id.* at 861 n.1.

aliens for asylum. We therefore held that "[t]he denial of asylum is reviewable because it is specifically exempted from § 1252(a)(2)(B)(ii)'s jurisdiction-stripping provisions." *Id.* at 980. The only asylum issue presented for review in *Morales* was the "particularly serious crime" bar. It is therefore clear that *Morales* held that we have jurisdiction to review that issue, and that ruling governs our present case.[14] We proceed, therefore, to examine whether the IJ erred in determining that Delgado's DUI convictions were "particularly serious crimes."

As we have already explained, our precedent establishes the case-by-case determination of a "particularly serious crime" to be an exercise of discretion. We accordingly review that decision for an abuse of discretion. *See Surita v. INS*, 95 F.3d 814, 819 (9th Cir. 1996) (holding that a discretionary denial of asylum is reviewed for abuse of discretion).

[12] As the dissenting opinion points out, the origin of the "particularly serious crime" category was the Convention Relating to the Status of Refugees, July 28, 1951, 10 U.S.T. 6259, 189 U.N.T.S. 150. The Convention prohibits returning an alien to a country where his "life or freedom would be threatened" on account of specified grounds, with an exception for aliens convicted of "a particularly serious crime." Convention, art. 33. This requirement and exception were

---

[14]*Morales* also recognized that we had no jurisdiction to review the Attorney General's discretionary decision finding DUI convictions to be particularly serious crimes for purposes of withholding of removal, as indicated by our decision in *Matsuk* and its progeny, discussed earlier in this opinion. *Morales* remanded the denial of withholding, however, because it held that the IJ had committed legal error in the parts of the record that it considered in determining the "particularly serious crime" issue. In so ruling, *Morales* deferred to BIA determinations of the records that may be considered. The BIA subsequently modified its stance in a precedential decision, *Matter of N—A—M—*, 24 I. & N. Dec. at 342. We have recently deferred to that ruling, permitting the BIA to consider all reliable information in making a particularly serious crime determination. *Anaya-Ortiz v. Mukasey*, 553 F.3d 1266, 1275-76 (9th Cir. 2009).

written into the Immigration and Nationality Act by the Refugee Act of 1980. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 429 (1987). Although the Convention did not define "particularly serious crime," it did create another exception for aliens who had committed a "serious nonpolitical crime" outside of the country of refuge. Convention, art. 1.F.b. As the BIA has stated, "it should be clear that a 'particularly serious crime is not the equivalent of a 'serious nonpolitical crime.' Further, a 'particularly serious crime' is more serious than a 'serious nonpolitical crime' . . . ." *Frentescu*, 18 I. & N. Dec. at 247. With reference to a "serious nonpolitical crime," the Handbook on Procedures and Criteria for Determining Refugee Status states that "a 'serious' crime must be a capital crime or a very grave punishable act." *Handbook*, ¶ 155, HCR/IP/4/ENG/REV.1 (Jan. 1992). *Frentescu* went on to state that determinations of particularly serious crimes would be made on a case-by-case basis, with reference to "such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, [the] danger to the community." *Frentescu*, 18 I. & N. Dec. at 247.

We accord *Chevron* deference to the BIA's discussion in the precedential decision of *Frentescu*, but that discussion does not in itself determine whether DUI is a particularly serious crime. The decision of a single IJ, not relying on a precedential ruling, that DUI is a particularly serious crime does not command *Chevron* deference. *See Marmolejo-Campos v. Holder*, 2009 WL 530950, at *6 (9th Cir. Mar. 4, 2009) (en banc).

**[13]** When the *Frentescu* factors are applied in the context of the international origins of the "particularly serious crime" exception, we conclude that it was an abuse of discretion to hold that Delgado's convictions are particularly serious crimes. Surely they do not exceed the "capital or grave" standard of "serious" nonpolitical crimes, and *Frentescu* indicates that particularly serious crimes should exceed that standard.

Delgado's sentences for the three offenses were incarceration for 12 months, 16 months, and 24 months— substantial but by no means long sentences under the standards of recent decades for serious crimes. It is true that driving under the influence can be dangerous, and at least one of Delgado's episodes was. Yet there was no intent to injure. The crime itself is careless or even reckless, but requires no intent and is "most nearly comparable to[ ] crimes that impose strict liability." *Begay v. United States*, 128 S.Ct. 1581, 1586 (2008). Thus, for other purposes DUI has been held not to be a violent felony. *Id.*; *Leocal v. Ashcroft*, 543 U.S. 1, 4 (2004). It is certainly a reprehensible crime, especially when repeated as it has been by Delgado, but Delgado's offenses had no distinguishing characteristics that elevate them to the high levels inherent in the origins of the "particularly serious crime" exception. It violates the principles underlying the Convention and the Refugee Act to hold Delgado's DUI crimes to be "particularly serious," so as to deny him eligibility for relief from repatriation to a country even if he is able to demonstrate a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).[15]

**[14]** We conclude, therefore, that the IJ abused his discretion in ruling that Delgado's DUI convictions were particularly serious crimes that rendered him ineligible for asylum. Because of that ruling of ineligibility, neither the IJ nor the BIA addressed whether Delgado met the substantive requirements for asylum and should be granted relief. We therefore grant Delgado's petition for review with regard to his asylum claim, and remand that matter to the BIA for further appropriate proceedings.

---

[15]In *Marmolejo-Campos*, 2009 WL 530950, at *9, we deferred to the BIA's decision that DUI after revocation of license was a crime of moral turpitude, but that decision dealt with a ground of removal, not a disqualification from asylum. The framework of the Convention and Refugee Act therefore did not enter the calculation.

## II.  Relief under the Convention Against Torture

**[15]** We have jurisdiction pursuant to 8 U.S.C. § 1252(a) to review the BIA's denial of Delgado's claim for CAT deferral, *see Morales*, 478 F.3d at 980-81, and we review that decision for substantial evidence. *Bellout v. Ashcroft*, 363 F.3d 975, 979 (9th Cir. 2004). In order to be eligible for CAT deferral, Delgado must prove that he is more likely than not to be tortured upon his return to El Salvador. *Id.*; 8 C.F.R. § 1208.17(a).

**[16]** As the IJ noted, Delgado presented evidence that his mother, and probably his father, were victims of the rampant human rights violations that took place in El Salvador in the late 1970s and early 1980s. However, Delgado has not provided sufficient evidence that he currently risks being harmed if he returns to his native country. Country reports indicate that conditions in El Salvador have improved significantly since Delgado left the country, and that there is no longer evidence of politically motivated violence, killings, or disappearances in El Salvador. We therefore conclude that the BIA's decision that Delgado is not entitled to CAT deferral is supported by substantial evidence.

### *Conclusion*

The petition for review is granted with regard to Delgado's asylum claim, and that matter is remanded to the BIA for further appropriate proceedings. With regard to all his other claims, Delgado's petition is denied.

**PETITION GRANTED in part, DENIED in part, and REMANDED**.

BERZON, Circuit Judge, concurring in part and dissenting in part:

The majority opinion is seriously off-track with respect to its first two holdings, but its final conclusion regarding asylum is correct: We may review the BIA's asylum "particularly serious crime" holding on the merits, and, doing so, we can only conclude that the IJ abused his discretion in finding that Delgado was ineligible for asylum. As to our jurisdiction over the merits of the withholding of removal issue, I agree that we are bound by Ninth Circuit precedent, but believe that precedent to be quite wrong, as well as inconsistent with the law as it has been developing in other circuits.

To summarize my views:

*First* and most important, neither of the majority's two holdings concerning the "particularly serious crime" provisions of 8 U.S.C. §§ 1158(b)(2)(B) and 1231(b)(3)(B) can be reconciled with the most basic principles of statutory interpretation. The majority concludes that the "particularly serious crime" exclusions for asylum and withholding of removal mean nearly the same thing, substantively and procedurally, even though the language, structure, purpose, and context of the two sections are all quite different. That simply cannot be. For the reasons I discuss below, the only viable construction of the "particularly serious crime" provision of § 1231(b)(3)(B), the withholding version, is that only aggravated felonies can be "particularly serious crime[s]." And the only viable interpretation of the asylum "particularly serious crime" provision, § 1158(b)(2)(B), is that the Attorney General can make non-aggravated felonies "particularly serious crimes" only through regulation, not on a case-by-case basis.

*Second*, the majority properly relies on *Matsuk v. INS*, 247 F.3d 999 (9th Cir. 2001), to hold that the BIA's determination that a crime is "particularly serious" for withholding purposes is discretionary and so not reviewable, and so I concur in sec-

tion C(1) of the majority opinion, with one caveat. *See* pp. 4413-14, *supra*. But *Matsuk* rests on faulty premises, recently rejected by the Second and Third Circuits in convincing opinions. In my view, *Matsuk* should be reconsidered by this Court sitting *en banc*.

*Third*, the majority is correct as to its reliance on and application of *Morales*. I therefore also concur in part C(2) of the majority's opinion and do not address it further in this concurrence.

## I.   Particularly Serious Crime Exceptions

### A.   Overview

Congress's goal when it created the "particularly serious" crime exception was, in part, to provide a basis for removal of certain aliens convicted of criminal offenses that conforms to our international commitments. This purpose resulted in key differences between the "particularly serious crime" provisions applicable to withholding and those applicable to asylum. The majority's opinion considers neither the origin of the "particularly serious crimes" provisions nor the obvious differences between them, and so comes to the erroneous conclusion that the two provisions are both essentially identical and essentially limitless. As a result, the majority allows to stand the BIA's procedures for determining whether Delgado's DUI convictions were each "particularly serious crimes," for purposes of *both* asylum and withholding relief, a conclusion that, as I shall show, clashes with Congress's underlying basis for adopting the "particularly serious crime" exception.

### 1.   The Refugee Convention and Protocol

The original source of the term "particularly serious crime" is the 1951 Convention Relating to the Status of Refugees, 19 U.S.T 6259, 189 U.N.T.S. 150 ("Convention"). The Convention prohibits states from "return[ing] an alien to a country

where his 'life or freedom would be threatened' on account of one of the enumerated reasons." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 429 (1987). An exception to this rule permits removal of an alien who, "having been convicted . . . of a particularly serious crime, constitutes a danger to the community of that country." Convention, art. 33 (2).

Both the duty not to remove an alien to a country where such persecution is likely and the "particularly serious crime" exception were adopted by the United States through accession to the 1967 UN Protocol relating to the Status of Refugees ("Protocol"), 19 U.S.T. 6223, 606 U.N.T.S. 267, which includes the obligations previously enumerated in the Convention. Both the duty and the exception were incorporated, in turn, in the Immigration and Nationality Act ("INA") by the Refugee Act of 1980. *See Cardoza-Fonseca*, 480 U.S. at 429; *Matter of Frentescu,* 18 I. & N. Dec. 244, 246 n.2, (BIA 1982). Thus, "[i]f one thing is clear from the legislative history of the . . . 1980 Act, it is that one of Congress' primary purposes was to bring United States refugee law into conformance with the 1967 United Nations Protocol Relating to the Status of Refugees." *Cardoza-Fonseca,* 480 U.S. at 436.

Consistent with this purpose, the Supreme Court has interpreted terms used in these 1980 refugee amendments to the INA in light of their meaning under the Convention and Protocol. *See id.* at 439 nn.22 & 24 (citing UN High Commission for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status,* Ch. II B(2)(a) §§ 37-42 (1979) ("Handbook"), and 1 A. Grahl-Madsen, *The Status of Refugees in International Law* 180 (1966)) (interpreting term "refugee" as used in § 243(h) of the INA by 1980 Act, through reference to analysis of its meaning under the Protocol)). The meaning of "particularly serious crime" under the Convention and Protocol is thus critically important in interpreting the same term in the INA.

Taking that approach, how serious is a "particularly serious crime"? The Convention and Protocol do not provide a definition, but they do offer a basis for comparison with other offenses. In *Matter of Frentescu*, the BIA pointed out that because the Convention also established an exception to withholding of removal for "serious nonpolitical crimes" an alien has committed *outside* the country where he has taken refuge, "it should be clear that a 'particularly serious crime' . . . is *more* serious than a 'serious nonpolitical crime." *Id.* at 247 (emphasis added); *see also* 8 U.S.C. § 1231(b)(3)(B)(iii); Convention art. 33(1)(F) (establishing that an "alien [who] committed a serious nonpolitical crime outside the United States *before* the alien arrived in the United States " is not eligible for withholding of removal) (emphasis added). In other words, an offense that is *less serious* than a "serious nonpolitical crime" cannot be a "particularly serious crime." The Handbook, which "provides significant guidance in construing the Protocol," *Cardoza-Fonseca,* 480 U.S. at 439 n.22, describes a "serious non-political crime" as "a capital crime or very grave punishable act." *Handbook*, ¶ 155 (1992 ed.). To qualify as a "particularly serious crime" under the Convention and Protocol, then, an offense must be *more* serious than just any "very grave punishable act."[1]

While such an interpretation of "particularly serious crime" may seem overly narrow, it is consistent with the basic premises of the Convention. Conviction for a "particularly serious crime" permits removal of an alien to a country where it is *probable* that he will be deprived of "life or freedom" on

---

[1]Confirming this understanding of the exception's scope are the specific examples of "particularly serious crime" offered by a leading commentator on the Convention. *See* Grahl-Madsen, *Commentary on the Refugee Convention, 1951,* art. 33 cmt. 10 (1997). The examples given are instances of murder with aggravating circumstances, for which conviction, in our own legal system, would typically be punishable by death or a life sentence. *See id.* (offering as examples of particularly serious crimes "blowing up . . . a passenger airplane in order to collect life insurance, or wanton killing in a public place.").

account of protected grounds. Convention art. 33(1), (2). The reason removal under these circumstances is justified is that the alien has committed a crime so serious that, even if he remained in his country of refuge, its state would be justified in imposing grave punishment upon him.

In this case, the BIA determined that Delgado was ineligible for asylum and withholding of removal because his three DUI convictions constituted a "particularly serious crime" under both §§ 1231(b)(3)(B) and 1158(b)(2)(B), relating to withholding of removal and asylum respectively. Among these offenses was a conviction for driving under the influence causing death or bodily injury, which resulted from an accident where Delgado and his passenger (and possibly, though the record is unclear, the occupants of the other vehicle) were seriously injured. While I in no way minimize the seriousness of Delgado's offenses, I do not see how a DUI — which, as the majority recognizes, is not an "aggravated felony" for purposes of our own immigration law, *see* Maj. Op. at 4371 — can be a "particularly serious crime" in the sense that Congress understood the term when it incorporated it into the INA — at least with respect to withholding of removal, which, as I explain shortly, is the bedrock protection afforded aliens in danger of persecution in their home countries on a protected ground.

### 2. Asylum and Withholding of Removal

A conviction for a "particularly serious crime" makes an alien ineligible for asylum, as well as for withholding of removal. § 1158(b)(2)(B) (asylum); § 1231(b)(3)(B) (withholding). However, "Congress has drawn a critical distinction in its use of the term 'particularly serious crime' " in § 1158(b)(2)(B) as compared with the use of the same term in § 1231(b)(3)(B), *In re L-S-,* 22 I. & N. Dec. 645, 652 (BIA 1999), and for good reason.

Regarding eligibility for withholding of removal, § 1231(b)(3)(B) states that,

> [A]n alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime. In the case of eligibility for asylum, § 1158(b)(2)(B) establishes

that,

> [A]n alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime.
> . . . The Attorney General may designate by regulation offenses that will be considered to be a [particularly serious] crime . . .

The obvious differences in the statutory text of these two subsections suggest three distinctions in meaning.

*First*, the category of *per se* "particularly serious crime[s]" is broader in the asylum context than it is in the case of withholding of removal. Section 1158(b)(2)(B) makes all aggravated felonies *per se* "particularly serious crime[s]" for asylum purposes, while § 1231(b)(3)(B), pertaining to withholding of removal, only makes aggravated felonies "for which the alien has been sentenced to an aggregated term of at least five years imprisonment" a *per se* category of "particularly serious crime[s]."

*Second*, with regard to asylum, the statutory structure and language suggest no express limitation as to *which* crimes may be designated as "particularly serious." Rather, all aggravated felonies are *per se* "particularly serious," and other crimes may be so designated. In contrast, the withholding of

removal provision confers on the Attorney General the authority to determine that an offense is a "particularly serious crime" notwithstanding the length of the sentence imposed, but does not confer any express authority to designate non-aggravated felonies as "particularly serious."

*Third*, the two subsections define differently how offenses outside of these *per se* categories may be determined to constitute particularly serious crimes. The asylum provision states that "the Attorney General may designate *by regulation* offenses that will be considered particularly serious crimes." (emphasis added). By contrast, the withholding provision gives the Attorney General the general authority to "determine" whether a crime is particularly serious, indicating that any otherwise permissible method of determination is allowed.

The majority concludes that these obvious distinctions are without much practical difference. On the majority's view, the *only* difference between the two "particularly serious crime" exceptions is that for asylum purposes all aggravated felonies are *per se* particularly serious crimes, while for withholding purposes only aggravated felonies for which the sentence was longer than five years are automatically particularly serious. As to the Attorney General's ultimate authority — to designate *any* crime as particularly serious — and methodology — to designate crimes as particularly serious by regulation or on a case-by-case basis — the majority sees the two statutes as identical. Why Congress bothered to word the otherwise parallel sections so differently in this regard when it meant the same thing we are not told.

Taking together the guidance provided by Congress's intention to abide by the Protocol and Convention and the very different statutory language Congress used with regard to asylum and withholding of removal, I would begin my interpretation of the statute by recognizing — as the majority does not — that Congress wrote two different "particularly

serious crime" provisions because it meant two different things. Critically, asylum and withholding of removal differ under the INA in ways other than the differences in their "particularly serious crime" provisions, and do so in ways connected to the Protocol and the Convention. These other differences go a long way toward explaining why the "particularly serious crime" exception is considerably broader substantively but more restrictive procedurally for asylum than for withholding of removal.

For an alien to be granted withholding of removal under the INA, he must show that it is "more likely than not" that he will be persecuted in the country to which he otherwise would be removed. *INS v. Stevic,* 467 U.S. 407, 424 (1984); 8 U.S.C. § 1231(b)(3)(A) (prohibiting removal of an alien whose "life or freedom would be threatened in that country [to which the alien otherwise would be removed] because of [a protected ground]"). Withholding of removal thus represents the minimum level of relief required by the Convention and Protocol. *Compare* § 1231(b)(3)(A), *to* Convention, art. 33 (1) (stating that no Contracting State may "return ('refouler') a refugee . . . to the frontiers of territories where his life or freedom would be threatened on account of [a protected ground]"). Accordingly, such relief is mandatory if an alien is eligible. *See* 8 U.S.C. § 1231(b)(3)(A)("[T]he Attorney General *may not* remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country . . ." (emphasis added)); *Stevic,* 467 U.S. at 421 n.15.

By contrast, to be eligible for asylum an alien is not required to show that it is "more likely than not," *id.* at 424, that he will be persecuted in the country to which he would be removed. Instead, he need only show that he has been persecuted on account of a protected ground in the past, or that he has a "well-founded fear" of persecution in the future. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). To establish such a well-founded fear, an applicant need only show a one in ten

chance of persecution. *See Cardoza-Fonseca*, 480 U.S. at 431. At the same time, the granting of asylum to eligible aliens is discretionary, not mandatory. *See* 8 U.S.C. § 1158 (b)(1)(A) ("(T)he Attorney General *may* grant asylum . . . " (emphasis added)). The reason that this discretionary benefit is consistent with this country's obligations under the Convention and Protocol, and therefore with Congress' intention to "bring United States refugee law into conformance with the . . . Protocol," *Cardoza-Fonseca,* 480 U.S. at 436, is that the standards for eligibility for asylum are more relaxed than the Convention and Protocol require. As a result, as Congress understood, asylum need not conform in all respects with the international commitments, as long as withholding relief does so conform.

These substantive differences between asylum and withholding of removal under the INA have important implications for how the "particularly serious crime" exception applies to each form of relief from removal. Withholding of removal is the form of relief essential to Congress's goal of "conformance with the . . . Protocol." *Id.* at 436. That goal can only be achieved if a "particularly serious crime" for which an alien is denied eligibility for withholding of removal under the statute also qualifies as such under the Protocol itself. Not so with asylum, because asylum relief, as a whole, is not structured to conform to the Protocol.

This critical substantive distinction between asylum and withholding of removal suggests some answers to the key question that the majority, puzzlingly, does not even ask: Why did Congress in IIRIRA adopt such distinctly different statutory language to define the same term — "particularly serious crime" — in § 1231(b)(3)(B), relating to withholding of removal, and in § 1158 (b)(2)(B), relating to asylum? The evident reasons are two.

*First*, with respect to the asylum exception, Congress did not need to give the Attorney General the authority to "deter-

mine" on a case-specific basis which offenses constitute "particularly serious crime[s]." Even for aliens *eligible* for asylum, the Attorney General can exercise discretion not to grant asylum because of the alien's criminal record, whether the alien has committed a "particularly serious crime" or not. The only reason to specify "particularly serious crimes" for asylum eligibility purposes, consequently, is to provide for uniformity with regard to *categories* of crimes. By contrast, aliens who qualify for withholding of removal are *mandatorily* entitled to such relief, *see Stevic,* 467 U.S. at 421 n.15, so there could be no case-by-case individualized "determin[ation]" based on criminal history without specific statutory authorization. E

*Second*, the difference between the eligibility and discretion standards applicable to asylum and withholding of removal also helps explain why Congress made all aggravated felonies, not only those with sentences of five years or more, *per se* "particularly serious crime[s]" for asylum purposes and also why Congress did not restrict "particularly serious crimes" to aggravated felonies for that purpose. Limitations on asylum relief do not risk violation of the Protocol, so long as withholding of removal relief conforming to the Protocol remains available. *See, generally, L-S-,* 22 I. & N. Dec. at 652 (stating that "the reason for [Congress'] . . . different approach" in § 1158(b)(2)(B) and § 1231(b)(3)(B) is that "Congress understood that in enacting revised section [§ 1231](b)(3), it was carrying forth the statutory implementation . . . of our international treaty obligations"). Consequently, there was reason for Congress to take particular care with regard to withholding of removal, to assure that aliens who otherwise meet the statutory requirement for relief are denied this relief only for offenses that are likely to meet the "particularly serious crime" exception in the Protocol.

The majority turns a blind eye to all of these considerations — the meaning of the "particularly serious crime" locution in the original internal documents, the differences between asy-

lum and withholding relief, and the obvious distinctions between the asylum and withholding "particularly serious crimes" exceptions. Not surprisingly, given its out-of-context approach, the majority's ultimate conclusions on the "particularly serious crime" issues are wrong as well.

## B.    8 U.S.C. § 1231(b)(3)(B) — Withholding of Removal

The majority concludes that § 1231(b)(3)(B) authorizes the Attorney General to designate any non-aggravated felony as a "particularly serious crime" for purposes of eligibility for withholding of removal.[2] Even on its own narrow terms, the majority's reasoning in so concluding is inconsistent with a plain reading of the text, with established canons of statutory interpretation, and with the history of the provision.

---

[2]The majority views this issue as one of first impression in our circuit. In so concluding, the majority misreads our decision in *Morales* as having "assumed . . . [that] the Attorney General could deem a non-aggravated felony 'particularly serious.' " Maj. Op. at 4374 n.5. In fact, *Morales* recognized that such an interpretation is *not* in accord with our previous cases; instead, it "broadens the discretion we have previously determined that § 1231(b)(3)(B)(ii) gives the Attorney General." 478 F.3d at 979-80 (citing *Afridi v. Gonzales,* 442 F.3d 1212, 1217 (9th Cir. 2006); *Unuakhaulu v. Gonzales*, 416 F.3d 931, 935 (9th Cir. 2005); *Singh v. Ashcroft*, 351 F.3d 435, 439 (9th Cir. 2003); *Matsuk*, 247 F.3d at 1002)). *Morales* went on to make clear that the question whether the Attorney General's discretion is broader than we had previously held it was would "not be determined in this case." *Id.*

Quite arguably, the question is not one that can be properly decided by a three-judge panel, given the earlier cases construing § 1231(b)(3)(B) as not encompassing the broad discretion the BIA now claims. *See In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1018 (9th Cir. 2000) ("[A]bsent a rehearing en banc, we are without authority to overrule [circuit precedent]"). I nonetheless in this dissent meet the majority on its own ground, rather than resting on *stare decisis*.

### 1.  Statutory Language

Initially, as the Third Circuit held in *Alaka v. Atty. Gen. of the United States,* 456 F.3d 88 (3d Cir. 2006), a plain words, common sense reading of § 1231(b)(3)(B) indicates that Congress did not authorize the Attorney General to designate non-aggravated felonies as particularly serious crimes. *See id.* at 104. After specifying that any aggravated felony resulting in a sentence of five years or more "shall be considered . . . a particularly serious crime," § 1231(b)(3)(B) provides that "the previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." Quite obviously, the authority conferred — to "determin[e] that, *notwithstanding the length of sentence imposed*, an alien has been convicted of a particularly serious crime" — refers to the limitation imposed in "the previous sentence" — whether the offense carried an "aggregate term of imprisonment of at least five years." *Id.* (emphasis added).

This Court has at least three times previously recognized that this is the natural reading of the statutory text. *See Villegas v. Mukasey*, 523 F.3d 984, 987 (9th Cir. 2008) ("Crimes resulting in imprisonment for at least five years are 'particularly serious' per se, while the Attorney General can determine that any aggravated felony, regardless of the sentence imposed is particularly serious."); *Afridi,* 442 F.3d at 1217 (stating that § 1231(b)(3)(B)(ii) provides the Attorney General with "discretion to determine whether an aggravated felony conviction resulting in a sentence of less then five years is a particularly serious crime"); *Singh v. Ashcroft*, 351 F.3d 435, 439 (9th Cir. 2003) ("An aggravated felony that results in at least a five-year sentence is considered a particularly serious crime. Moreover, under Section 1231(b)(3)(B)(ii) the Attorney General may determine that any aggravated felony, even one that results in a sentence of less than five years, qualifies as particularly serious."). That this court has repeatedly regarded that understanding of the provision as the

facially apparent one confirms that it is the ordinary meaning that a reader takes from it. I submit that the reason these cases did not saying anything more on the matter is that there is nothing more to say, once one reads the statute.

The majority, however, regards our earlier cases as not having adequately addressed the possibility that non-aggravated felonies are "particularly serious crimes," and goes on to adopt the reasoning of the Seventh Circuit's decision in *Ali v. Achim*, 468 F.3d 462 (7th Cir. 2006), *cert. granted,* 128 S. Ct. 29, *cert. dismissed*, 128 S. Ct. 828 (2007). *Ali*'s interpretation, later adopted by the BIA in *In re N-A-M-*, 24 I. & N. Dec. 336 (BIA 2007), relies on what the statute *doesn't* say, rather than on what it does, asserting that because "§ 1231 does not state a general rule that only aggravated felonies can be considered 'particularly serious' crimes," § 1231(b)(3)(B) "creates no presumption that the Attorney General may not exercise discretion on a case-by-case basis to decide that other nonaggravated-felony crimes are also 'particularly serious.' " 468 F.3d at 470. *Ali* — and the majority's — reading of § 1231(b)(3)(B) runs counter to basic principles of statutory construction.

*First*, the *Ali/N-A-M-* interpretation renders the sentence that begins "the previous sentence" entirely superfluous. If Congress's (unstated) understanding was that the Attorney General could designate *any* offense as a particularly serious crime, then why would Congress need to say anything to negate the contrary implication of the "previous sentence"? And once Congress did choose to clarify that some discretion remained to the Attorney General, why would it limit that clarification to extending this authority "notwithstanding the length of a sentence," if it meant to allow unlimited discretion? We simply don't read statutes as throwing around loose, meaningless language for no discernible reason. *See United States v. Novak*, 476 F.3d 1041, 1048 (9th Cir. 2007) (stating that courts should "avoid whenever possible statutory inter-

pretations that result in superfluous language"). Yet, that is what the majority, relying on *Ali* and *N-A-M-,* proposes.

The majority's interpretation of §1231(b)(3)(B) also conflicts with another basic interpretive rule, "*expressio unius est exclusio alterius*," which specifies that the inclusion of one item ordinarily excludes similar items that could have been, but were not, mentioned. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Section 1231(b)(3)(B) specifically permits the Attorney General to designate aggravated felonies resulting in prison terms of less than five years as "particularly serious crime[s]." "[W]hen the items expressed are members of an associated group . . . the inference [is] that items not mentioned were excluded by deliberate choice." *Id.* (internal quotation marks omitted). Whether we define the "associated group" here as "crimes," "felonies" or "aggravated felonies," the sole members of the group named in § 1231(b)(3)(B) are convictions for *aggravated* felonies: those carrying sentences of more than five years, and those carrying sentences of less than five years. The fact that *non-aggravated felonies* were not mentioned at all necessarily suggests that Congress did not intend to include them as "particularly serious crime[s]" for purposes of withholding of removal.

*Ali* suggests that the canon does not apply in this case because "§ 1231 does not state a general rule that only aggravated felonies can be considered 'particularly serious.' " 468 F.3d at 470. But this rejoinder turns the canon of construction backwards. The canon looks to what a statute includes ("*expressio unius*"), to determine what it does not ("*exclusio alterius*"), not *vice versa*.

Moreover, and critically, the majority's interpretation fails to give effect to the distinctions in statutory language between § 1231(b)(3)(B) and § 1158(b)(2)(B). The latter states, in § 1158(b)(2)(B)(i), that *any* "[c]onviction of an aggravated felony," is a particularly serious crime, but then adds, in

§ 1158(b)(2)(B)(ii), that "[t]he Attorney General may desig-
nate by regulation offenses that will be considered" a particu-
larly serious crime, without any mention of "the length of the
sentence imposed." The majority nonetheless reads the
authority accorded the Attorney General under the two quite
different "particularly serious crime" provisions as identically
broad. "[W]here Congress includes particular language in one
section of a statute but omits it in another section of the same
Act, it is generally presumed that Congress acts intentionally
and purposely in the disparate inclusion or exclusion." *Tang
v. Reno,* 77 F.3d 1194, 1197 (9th Cir. 1996).

To make matters worse, the majority's interpretation of
§ 1231(b)(3)(B)(ii) is also inconsistent with the rest of the
subsection. As I explained earlier, the subsection also pro-
vides that an "alien [who] committed a serious nonpolitical
crime outside the United States *before* the alien arrived in the
United States" is ineligible for withholding of removal.
§ 1231(b)(3)(B)(iii) (emphasis added). "[W]hat constitutes a
'serious nonpolitical crime' is not susceptible of rigid defini-
tion." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 429 (U.S. 1999)
(quoting *Deportation Proceedings for Doherty*, 13 Op. Off.
Legal Counsel 1, 23 (1989)). Still, the offenses that the BIA
has considered "serious nonpolitical crimes," typically fall
well within the current definition of aggravated felony. *Com-
pare, e.g., id.* at 420-21 (battery, and destruction of public and
private property); *Kenyeres v. Ashcroft,* 538 U.S. 1301, 1306
(2003) (money-laundering for organized crime); *to* 8 U.S.C.
§ 1101(a)(43)(D) (defining "aggravated felony" as including
money laundering); § 1101(a)(43)(F) (defining "aggravated
felony" as including crimes of violence against persons or
physical property). Yet, "a 'particularly serious crime' . . . is
*more serious* than a 'serious nonpolitical crime,' " *Frentescu,*
18 I. & N. Dec. at 247 (emphasis added). So, unless the stat-
ute is hopelessly internally inconsistent, offenses *less serious*
than aggravated felonies cannot be "particularly serious
crime[s]". *See Padash v. INS,* 358 F.3d 1161, 1170-71 (9th
Cir. 2004) ("We must make every effort not to interpret the

provision at issue in a manner that renders other provisions of the same statute inconsistent . . . ." (internal quotation marks and brackets omitted)).

The short of the matter is that the majority's reading of § 1231(b)(3)(B)(ii), like BIA's reading in *N-A-M-*, clashes with one principle of statutory interpretation after another. Applying those principles, there is nothing ambiguous about the withholding exception for "particularly serious crimes." And because the application of a myriad of "the traditional tools of statutory interpretation" to § 1231(b)(3)(B) shows that "the intent of Congress" — that non-aggravated felonies cannot qualify as "particularly serious crimes" for purposes of withholding of removal — is clear from the face of the statute, *Sloan v. West,* 140 F.3d 1255, 1261 (9th Cir. 1998), we need not, contrary's to the majority's assertion, extend *Chevron* deference to the BIA's position in *N-A-M-* on this issue. *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843 n.9 (1984); *see also Bell v. Reno*, 218 F.3d 86, 94 (2d Cir. 2000) ("An agency's interpretation of a statutory provision is not reasonable when it ignores an established rule of statutory construction set forth by the Supreme Court.").

The BIA's opinion in *N-A-M-* does not warrant *Chevron* deference for the additional reason that the Board itself did not consider the opinion to reflect its reasonable interpretation of an ambiguous statute. Rather, the Board concluded that its position was compelled by a "plain reading of the Act." *See N-A-M-*, 24 I. & N. at 338. Because the Board was not attempting to fill a gap left by Congress, it was not acting pursuant to an agency's general authority to resolve statutory ambiguities, and its decision is therefore not entitled to deference. *See Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.*, 471 F.3d 1350, 1354 (D.C. Cir. 2006) ("[D]eference to an agency's interpretation of a statute is not appropriate when the agency wrongly believes that interpretation is compelled by Congress.") (internal quotations marks and citations omitted).

## 2. Legislative History

On my understanding of the withholding exception for "particularly serious crime[s]," the analysis should stop with the words of the statute, read common-sensically, in context, and in light of established principles of statutory interpretation. *See Cardoza-Fonseca*, 480 U.S. at 452-53 (Scalia, J., concurring) ("Where the language of [a] law[ ] is clear, we are not free to replace it with an unenacted legislative intent;" nor is an "exhaustive analys[is]" of a statute's legislative history appropriate "where the language of the enactment at issue is clear."); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."). The majority and *N-A-M-* nonetheless insist on reading the statute through the prism of its history, rather than on its face — and doing so, get the message of that history dead wrong.

As the majority accurately recounts, the "particularly serious crimes" concept first appeared in the INA in 1980, in a provision denying withholding of removal to an alien who, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." Pub. L. No. 96-212, § 200, 94 Stat. 102 (1980). The majority does not recognize, however, that the original "particularly serious crime" concept was adopted from the Refugee Convention and Protocol's *non-refoulement* provision, not created out of whole cloth by Congress. As such, the concept was intended, as its words suggest, as a quite narrow exception to the responsibility not to send aliens back to countries where they are likely to be persecuted on protected grounds, for crimes not only "serious," but "*particularly* serious."

The changes to § 243(a) here relevant all furthered Congress's intent to assure compliance with the Refugee Convention and Protocol. First, in the Immigration Act of 1990

("1990 Act"), soon after the first appearance of the "aggravated felony" concept in the INA in 1988, *See* Pub. L. 100-690, § 7342, 102 Stat. 4181 (1988), Congress created a categorical bar to withholding of removal for aliens convicted of aggravated felonies by designating all such offenses *per se* "particularly serious crimes." *See* Pub. L. No. 101-649, 104 Stat. 4978, 5053. At the time, the crimes designated as "aggravated felonies" were indeed quite serious, so designating them as per se "particularly serious" was a way of assuring uniformity and efficiency. *See* Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469-4470 (1988 version of the INA) ("aggravated felony" defined as: "murder; any drug trafficking crime, . . . or any illicit trafficking in any firearms or destructive devices"); *also* Pub. L. No. 101-649, § 501, 104 Stat. 4978, 5048 (Immigration Act of 1990) (money laundering and crimes of violence for which the term of imprisonment is at least five years added to list of "aggravated felon[ies]").

Next, in 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), which "expanded the definition of aggravated felony" to include a much greater range of offenses, thus broadening the "particularly serious crime" exception's reach. *See Choeum v. INS,* 129 F.3d 29, 42 (1st Cir. 1997). Because AEDPA's expanded definition of aggravated felony "include[d] crimes that might be considered less serious than those the Protocol intended to cover in its exclusion clause," Congress became concerned that application of the categorical bar would result in removals that did not conform to the Protocol. *Id.* As Senator Kennedy explained,

> [T]o declare an aggravated felon anyone convicted of an offense involving imprisonment of one year, . . . means that people with fairly minor offenses would be ineligible to seek withholding of deportation, [which] in many instances may violate the Refugee Convention.

Mark-up on S. 1664 before the Senate Committee on the Judiciary, 104th Cong., 2d Sess. 60-61 (1996). To address this concern, Congress included in AEDPA a provision allowing the Attorney General to override the 1990 Act's categorical designation of "aggravated felonies" as "particularly serious crimes" if withholding of removal was "necessary to ensure compliance with the 1967 United Nations Protocol Relating to the Status of Refugees." 8 U.S.C. § 1253(h) (current version at § 1231(b) (1996)); *Choeum,* 129 F.3d at 43 (1st Cir. 1997).

The final step in the evolution of the withholding of removal "particularly serious crime" exception was the enactment, later in 1996, of IIRIRA, which gave us the current statutory text of the INA and yet again expanded significantly the "aggravated felony" concept. *See* Pub. L. No. 104-208, Div. C, § 321, 110 Stat. 3009-546, 3009-627-3009-628. In particular, for several offenses Congress reduced the minimum penalty necessary for a conviction to qualify as an aggravated felony from five years to one, *see* § 321(a)(3), (10), (11). This vast broadening of the "aggravated felony" category of crimes had obvious implications for the usefulness of that category as a stand-in for the "particularly serious crime" withholding exception. It was in that context that Congress, in IIRIRA, removed the 1990 Act's broad categorical bar for all aggravated felonies as well as AEDPA's override provision, substituting for both (1) the narrower categorical bar for aggravated felonies "for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years," and (2) the provision for "the Attorney General . . . [to] determin[e] that, notwithstanding the length of sentence imposed, [the] alien has been convicted of a particularly serious crime." The current statutory text thus is most sensibly understood as still another attempt to implement the "particularly serious crime" exception in a manner that conforms with the Protocol, this time accounting for IIRIRA's further broadening of the aggravated felony category by both limiting the per se category to

a subset of aggravated felonies *and* limiting "particularly serious crimes" to only aggravated felonies.

Nothing in this history suggests a Congressional intent in 1996 to allow the Attorney General to designate as "particularly serious crimes" offenses so minor that Congress did not regard them as within the now broad category of "aggravated felonies" used for other INA and immigration law purposes.[3] Put another way, nothing in the sequence of enactments ending in the current version of § 1231(b)(3)(B) indicates that Congress intended to allow an alien to be removed to a country where he *probably* will be persecuted on account of his race, religion, nationality, membership in a particular social group, or political opinion, because he committed a crime too minor to be designated an "aggravated felony" under the INA — too minor, for example, to disqualify him from other forms of relief or to require that he be detained pending removal proceedings. Instead, the current version of the statute recognizes that even among the crimes designated as "aggravated felonies," many — perhaps most — now would not meet the "particularly serious" exception of the Protocol and Convention, and so leaves the Attorney General the task of sorting out, on a case-by-case basis, which of the expanded class of "aggravated felonies" are "particularly serious."

In sum, the statutory text of § 1231(b)(3)(B), interpreted in context and in light of established canons of statutory construction, can only be read — and we have always read it — as providing the Attorney General the authority to determine that aggravated felonies with sentences of less than a year, but not other crimes, are "particularly serious" for the purposes of

---

[3]Among other things, the "aggravated felon[ ]" designation requires mandatory detention, 8 U.S.C. § 1226(c)(1)(B), permits expedited removal proceedings, 8 U.S.C. § 1228, and may disqualify the alien from benefits such as cancellation of removal for permanent residents, 8 U.S.C. § 1229b(a), temporary protected status, 8 U.S.C. § 1254a(c)(2), and pre- and post-hearing voluntary departure, 8 U.S.C. §§ 1229c(a)(1) & (b)(1).

eligibility for withholding of removal. Nothing in the legislative history indicates otherwise. I therefore cannot agree with the majority's conclusion that the Attorney General has free rein to call *any* crime "particularly serious" and so send an alien to a country where he is *likely* to be persecuted.

## C.    8 U.S.C. § 1158 (b)(2)(B)(ii) — Asylum

Nor can I agree with the majority's reading of the quite different asylum provision concerning "particularly serious crimes." Adopting, once again, the reasoning of the Seventh Circuit in *Ali*, the majority concludes that the IJ was authorized to decide on a case-specific basis that Delgado's non-aggravated felony convictions also qualified as particularly serious crimes, rendering him ineligible for asylum under § 1158(b)(2)(B). *See* 468 F.3d at 469 (stating that § 1158 (b)(2)(B) does not require the Attorney General to anticipate his adjudication by regulation covering every single crime.).[4] And this interpretation is, once again, in conflict with the plain words, common sense reading of the statute.

Congress explicitly stated that the authority granted in 8 U.S.C. § 1158(b)(2)(B)(ii) to "designate . . . offenses that will be considered to be a [particularly serious crime]" is an authority that may be exercised "by regulation." The majority maintains that the "by regulation" language pertains only to categorical exceptions, and that the BIA can also proceed by case-by-case adjudication.

---

[4]As to this issue, neither the BIA's decision in this case, nor its underlying opinion reviewed in *Ali* are published opinions. No published BIA opinion discusses whether § 1158(b)(2)(B) permits the determination of whether an offense is a "particularly serious crime" on a case-by-case basis, rather than "by regulation." We therefore do not owe the BIA *Chevron* deference on this point. *See Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012-14 (holding that unpublished BIA decisions are not entitled to *Chevron* deference).

The first problem with this reading of the statute is that it is not what the statute says. The "by regulation" sentence is general; it is not limited to categorical distinctions. And the statute does not provide for any other way of determining that offenses are "particularly serious" for asylum purposes.

Moreover, the majority's implication from silence does not explain why Congress included the "by regulation" sentence. Indeed, under the majority's interpretation, the sentence is — once more — entirely surplusage. "Absent express congressional direction to the contrary, agencies are free to choose . . . between rule making and adjudication." *Davis v. EPA,* 348 F.3d 772, 785 (9th Cir. 2003) (parentheses and citations omitted). The INA provides the Attorney General broad power to "establish such regulations . . . as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103(a) (current § 1103(g)(2); *United States v. Chen,* 2 F.3d 330, 333 (9th Cir. 1993)). So there was no need to include the "by regulation" sentence in § 1158(b)(2)(B) to *authorize* the BIA to issue regulations designating categories of offenses as "particularly serious crime[s]." That authority existed already.

Similar language concerning the promulgation of regulations as to particular issues has been understood to *require* regulations as the mode of agency decisionmaking as to that issue. *See Davis*, 348 F.3d at 785 (citing 42 U.S.C. § 7545(a)'s directive that "[t]he Administrator *may by regulation designate* any fuel . . . [for registration pursuant to § 7545(b)])" as proof that "Congress knew how to *impose rulemaking requirements* under the Clear Air Act when it wanted to do so") (emphasis added)). Moreover, Congress could have specified that the Attorney General was authorized to make "particularly serious crime" determinations via adjudication, via regulation, or via both methods. As it chose to only specify "by regulation," § 1158(b)(2)(B), the necessary — and non-superfluous — implication is that it chose to exclude the other options. *See Barnhart,* 537 U.S. at 168.

This implication is strengthened by the consideration that no similar "by regulation" sentence appears in the withholding of removal section governing "particularly serious crimes," a difference that should be accorded some significance. *See City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338 (1994) ("It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another") (internal quotation marks omitted) (citing *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). Given the general, broad statutory authorization Congress gave the Attorney General to issue regulations, we could not reasonably surmise that the Attorney General is precluded from issuing regulations to implement the withholding of removal "particularly serious crime" provisions by specifying categories of offenses as particularly serious. The only sensible implication from this difference between the two "particularly serious crime" provisions, consequently, is that the Attorney General can, but need not, proceed by regulation rather than case-by-case adjudication with respect to withholding, but must proceed by regulation with regard to the exception to eligibility for asylum.

This understanding of the textual differences makes perfect sense in light of other differences between asylum and withholding of removal. The Attorney General retains discretion to decide on a case-by-case basis whether to grant asylum to eligible applicants. *Cardoza-Fonseca*, 480 U.S. at 429, n.6. As an individualized determination occurs down-the-line in the asylum process, there was no reason to provide for such a case-by-case process at the eligibility stage. In contrast, withholding of removal is mandatory for eligible applicants, so any individualized determination must occur at the eligibility stage. There is also less need for case-by-case determination with regard to asylum, because a denial of asylum to an otherwise eligible alien does not directly raise the risk of noncompliance with the Refugee Convention. *Cf. L-S-,* 22 I. & N. Dec. at 652. Recognizing these differing concerns at issue in the two contexts results in an interpretation of the procedural

requirements of § 1158(b)(2)(B) more faithful to Congress' purposes than the one-size-fits-all approach adopted by the majority. *Cf. L-S-,* 22 I. & N. Dec. at 652 (interpreting § 1158(b)(2)(B), and § 1231(b)(2)(B) in same way "annul[s] the deliberate distinction made by Congress in the IIRIRA.").

Further, on my reading, Congress has already designated for withholding purposes the universe of offenses that can be designated as "particularly serious crimes" — aggravated felonies, as defined in the INA. *See* 8 U.S.C. § 1101(a)(43). As the authority accorded the Attorney General with regard to asylum is not so circumscribed, Congress could well have preferred a formal process, subject to public comment and to uniform application.

Finally, making such designations "by regulation" would not require the Attorney General to "sift through each state's [penal] code" to "identify through regulation every single 'particularly serious' [crime]." *Ali*, 468 F.3d at 469, cited in the majority opinion at 4379. As the majority recognizes, the Attorney General could issue regulations designating specific categories of non-aggravated felonies as particularly serious crimes, just as Congress already has done by statute for aggravated felonies. *See, e.g.*, 8 U.S.C. § 1101(a)(43) (designating certain categories of crimes as aggravated felonies). Alternatively, just as the BIA already does through adjudication in the case of aggravated felonies, the Attorney General could specify, through rule-making, those factors which would render a non-aggravated felony conviction a particularly serious crime for this purpose. *See Miguel-Miguel v. Gonzales*, 500 F.3d 941, 949 (9th Cir. 2007) (holding that the Attorney General has the authority to "create a strong presumption that drug trafficking offenses are particularly serious crimes").

In sum, Congress chose to require designation of *non*-aggravated felonies as "particularly serious crimes" for asylum purposes by formal promulgation of regulations, while allowing case-by-case designation of "particularly serious

crimes" for withholding purposes, but only from among aggravated felonies. Any other reading of the two statutes once again makes sameness out of difference and supposes that Congress indulged in redundancy and indirection.

## II. Jurisdiction

The majority accepts that we may decide the issues I have already discussed, presumably because they are purely legal issues. *See* 8 U.S.C. § 1252(a)(2)(D)**.** But the majority concludes that we lack jurisdiction to review the merits of the BIA's ultimate determination that Delgado's DUI convictions were "particularly serious crimes" under § 1231(b)(3)(B). This conclusion is premised on the view that this determination falls under § 1252(a)(2)(B)(ii)'s preclusion of judicial review of "decision[s] . . . the authority for which is specified under this subsection to be in the discretion of the Attorney General."

In *Matsuk v. INS,* we held that the authority granted by 8 U.S.C. § 1231(b)(3)(B) to deny withholding of removal of an alien "if the Attorney General decides that . . . [the] alien has been convicted of a particularly serious crime" is discretionary within the meaning of § 1252(a)(2)(B)(ii), and therefore that the BIA's denial of withholding on this basis is not reviewable by this Court. *See* 247 F.3d at 1002; *Spencer Enterprises, Inc. v. United States,* 345 F.3d 683, 690 (9th Cir. 2003). So I agree with the majority that our decision in *Matsuk* is controlling as to the reviewability of the IJ's ultimate determination that his DUI convictions constituted a "particularly serious crime" under § 1231(b)(3)(B).

*Matsuk*'s conclusion on this specific point has, however, recently been rejected by two circuits, in opinions I find persuasive. *See Alaka v. Atty General of the United States*, 456 F.3d 88 (3rd Cir. 2006); *Nethagani v. Mukasey*, 532 F.3d 150 (2d Cir. 2008). Both the Second and Third Circuits concluded that the fact that § 1231(b)(3)(B) gives the Attorney General

authority to " 'decide' or 'determine' " that an offense is a particularly serious crime is "not, standing alone, sufficient to 'specify' discretion." *Alaka*, 456 F.3d at 96-97. As the Third Circuit observed in *Alaka,* "Congress knows how to 'specify' discretion and has done so repeatedly in other provisions of the INA." *Id.* at 97 and n.17 (citing "thirty-two . . . provisions in the very subchapter of the INA referenced by 8 U.S.C. § 1252(a)(2)(B)(ii) that make explicit the grant of 'discretion' to the Attorney General or the Secretary of Homeland Security"). It did not do so in § 1231(b)(3)(B). *See id.; see also Nethagani*, 532 F.3d at 154-55.

Moreover, *Matsuk* is in tension with our own case law. *Matsuk* stated that,

> The decision to deny withholding to Matsuk was based upon the Attorney General's discretion, pursuant to Section 1231(b)(3)(B)(ii), to determine whether an aggravated felony conviction resulting in a sentence of less than 5 years is a particularly serious crime. Thus Section 1252(a)(2)(B)(ii) divests this court of jurisdiction to review this issue.

247 F.3d at 1002 (footnote and quotation marks omitted). *Matsuk* did not, however, explain why this is so. Instead, it simply cited the BIA's decision in *Matter of S-S-*, 22 I. & N. Dec. 458 (BIA 1999), which states that § 1231(b)(3)(B) "affords the Attorney General discretion to exercise her judgment as to whether the conviction is for a particularly serious crime when an alien has been sentenced to less than 5 years for the very same offense." 22 I. & N. Dec. at 464 (cited in *Matsuk*, 247 F.3d at 1002 n. 13).

As this Court recognized in *Spencer Enterprises*, however, § 1252(a)(2)(B)(ii) does not deprive us *generally* of jurisdiction to review "discretionary decisions" of the Attorney General under the INA. 345 F.3d at 689. Instead, § 1252(a)(2)(B)(ii) only restricts us from reviewing those

decisions "the *authority* for which is *specified* under the INA to be discretionary." *Id.* (emphasis in original). Under the test this Court adopted in *Spencer Enterprises*, it would appear that the determination of "particularly serious crime[s] under § 1231(b)(3)(B) is not a decision "the authority for which is specified under the INA to be discretionary." § 1252(a)(2)(B)(ii); 345 F.3d. at 689.

*Spencer Enterprises,* however, was decided after *Matsuk* and characterized "the decision at issue in *Matsuk* — whether to classify an alien's past offense as a 'particularly serious crime' under § 1231(b)(3)(B) — as one that "did fall under this second category, because it is "a decision that is entirely lacking in statutory guidelines."[5] *Id.* at 690. Given *Matsuk, Spencer Enterprises*, and *Morales*, I have no choice but to accept the majority's conclusion that we lack plenary jurisdiction to review the Attorney General's "particularly serious crime" designations with regard to withholding. But for these cases, I would hold, as have the Second and Third Circuits, that a statutory provision that simply gives the Attorney General authority to "determine" something is not one that is "specified under the INA to be discretionary." § 1252(a)(2)(B)(ii).

I note, however, that at least some of the issues Delgado seeks to raise on the merits regarding the IJ's designation of his offenses as a particularly serious crime are not ones that fall within the jurisdiction-stripping provisions of § 1252(a)(2)(B)(ii). Congress, in the REAL ID Act, has made clear that § 1252(a)(2)(B)(ii) does not "preclude[ ] [our] review of . . . questions of law raised upon a petition for review." § 1252(a)(2)(D). In *Morales,* this Court considered, in light of the REAL ID Act, how broadly to construe *Matsuk*'s holding regarding the BIA's unreviewable discretion to

---

[5]*Spencer Enterprises'* actual holdings, however, concerned the applicability of § 1252(a)(2)(B)(ii). to a different provision of the INA, § 1153(b)(5). *See* 345 F.3d at 691.

determine that a specific offense is a particularly serious crime. *See Morales*, 478 F.3d at 979, *citing Matsuk*, 247 F.3d at 1002. We stated that "this court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D) . . . to consider legal questions related to the determination of whether a crime is particularly serious." 478 F.3d at 980 (parentheses and citation omitted).

In his petition for review, Delgado questions whether, as a matter of law, DUI convictions can constitute a "particularly serious crime" under § 1231(b)(3)(B), and whether this statute should be applied retroactively to his convictions. *See Ramadan v. Gonzales,* 479 F.3d 646, 648 (9th Cir. 2007) (issues of statutory construction are *per se* questions of law). It may well be that Delgado cannot prevail on either of these issues. Section 1252(a)(2)(B)(ii), however, does not deprive us of jurisdiction to make this determination.

## Conclusion

I cannot agree with the majority that the BIA has authority to make "particularly serious crime" determinations for asylum purposes on a case-specific basis. I also would conclude that the IJ and BIA erred as a matter of law in determining that Delgado's convictions rendered him ineligible for withholding of removal under § 1231(b)(3)(B), so I would remand for consideration of the merits of this claim as well. I agree, however, that Delgado is eligible for asylum, and that we lack jurisdiction, for the most part, over the application of the withholding of removal standard. I therefore concur in the majority opinion to that extent.